In the Matter of SILVER MILL FROZEN FOODS, INC., Debtor.

Maurice A. EDLEMAN, Trustee, Plaintiff,

v.

McMULLIN ORCHARDS, Defendant.

Bankruptcy No. HG 80 00025.
Adv. No. 81 1827.

United States Bankruptcy Court,
W.D. Michigan.

Aug. 17, 1983.

Jeffrey Hughes, Grand Rapids, Mich., for plaintiff.

James Christenson, Grand Rapids, Mich., for defendant.

## OPINION

### RES JUDICATA, SPLITTING CAUSES OF ACTION

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the Court on a motion for summary judgment by McMullin Orchards based upon the doctrines of res judicata and the prohibition against splitting a single cause of action.

In August, 1979, debtor, Silver Mill Frozen Foods (Silver Mill) agreed to purchase 14,142 thirty pounds pails of frozen RSP cherries from McMullin Orchards (McMullin) for a total invoice price of $303,345.90. On August 29, 1979, McMullin sent to Silver Mill an invoice which stated "No product to be shipped until payment received." Included with the invoice was a non-negotiable warehouse receipt which evidenced that McMullin had placed the cherries with its bailee, M & H Cold Storage (M & H).

On September 1, 1979, Silver Mill sold 16,250 thirty pound pails of frozen RSP cherries to ITT Continental Baking Company, Inc. (ITT). The invoice and non-negotiable warehouse receipt sent to ITT expressly included the cherries that Silver Mill had agreed to purchase from McMullin. In return, ITT issued a check in full payment to Silver Mill in the amount of $348,562.50 on October 22, 1979.

On September 29, 1979, Silver Mill issued a check to McMullin for $101,115.30. McMullin refused to deliver any cherries until Silver Mill tendered the remaining portion of the purchase price. After negotiations took place, Silver Mill issued a second check to McMullin for $101,115.30. McMullin thereupon directed its bailee M & H to release 9,428 pails of cherries which were delivered to ITT. Silver Mill, experiencing financial difficulties, made no further payment and McMullin refused to deliver the remaining cherries to either Silver Mill or ITT. On January 4, 1980, Silver Mill filed a voluntary petition in bankruptcy under Chapter 11.

ITT sued Silver Mill, McMullin and M & H in this court on April 16, 1980. A temporary restraining order was entered enjoining McMullin and M & H from disposing of the cherries. The temporary restraining order was continued on April 25, 1980.

In its complaint, ITT sought a declaratory judgment that it was entitled to delivery from M & H of the remaining 4,714 pails of cherries covered by the debtor's non-negoti-

able warehouse receipt. Further, it sought an order directing M & H to release the cherries. McMullin defended by claiming that it had a superior interest in the remaining cherries and that the August, 1979, sale was a cash sale rather than a credit sale. In its answer, Silver Mill, as debtor in possession, prayed for an order granting the relief requested by ITT and filed a cross-claim against McMullin and M & H seeking indemnification for any judgment that ITT might obtain. After testimony and arguments a settlement was reached which resulted in a consent order by this Court dated May 27, 1980, dismissing the case with prejudice and without costs. Pursuant to the order, ITT paid $30,000 in full settlement of all claims which McMullin and M & H had to the cherries. Further, Silver Mill paid $10,000 to M & H in full settlement of all storage charges.

On December 15, 1981, Mr. Edleman, as trustee for Silver Mill, filed this adversary proceeding claiming that the two checks that the debtor issued to McMullin constitute preferential transfers under § 547 of the Bankruptcy Code. Defendant, McMullin has filed a motion for summary judgment alleging that this preference action is barred by res judicata and the rule against splitting a single cause of action.

■ The doctrine of res judicata bars relitigation of a cause of action that was previously decided in a valid and final judgment between the same parties or their privies. *Lawlor v. National Screen Services Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1954). The rules of res judicata apply to decisions of bankruptcy courts. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Essentially then, there are three elements of res judicata that must be met to grant McMullin's motion for summary judgment.

■ First, there must be a valid and final judgment. A consent judgment can have res judicata effect so long as the judgment, as here, was entered with prejudice. *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), *Reynolds v. International Harvester Co.,* 141 F.Supp.

371 (N.D.Ohio 1955), *aff'd,* 233 F.2d 959 (6th Cir.1956). The parties do not contest either the validity or the finality of the consent order of the Court dated May 27, 1980.

■ Second, there must be identity of parties involved in the two suits. It is clear that res judicata can be applied to bind co-parties:

A person who is joined as a party defendant under the governing practice, when his interest in the subject matter of the suit is parallel to the plaintiff's and adverse to the interest of the other defendant, is an adversary of his co-defendant, and the resulting judgment is binding between them. 1B J. Moore, Moore's Federal Practice ¶ 0.411[2] at 1284 (2d ed. 1982).

In the action commenced by ITT on April 16, 1980, concerning the ownership of the cherries, the interests of the co-defendant Silver Mill and McMullin were sufficiently adverse for the doctrine of res judicata to apply as between them in subsequent litigation. Mr. Edleman, as trustee, claims however that he cannot be bound in this preference action as privy to Silver Mill, the debtor in possession in the first action.

■ A privy is one who is so identified in interest with another that he represents the same legal right. *U.S. v. California Bridge & Construction Co.,* 245 U.S. 337, 38 S.Ct. 91, 62 L.Ed. 332 (1917). He "is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Howell v. Vito's Trucking and Excavating Co.,* 386 Mich. 37, 43, 191 N.W.2d 313 (1971). *See also In the Matter of Bancroft Dairy, Inc.,* 10 B.R. 920, 923 (B.R.W.D.Mich.1981). The trustee in bankruptcy is a successor to the bankrupt's property and for many purposes is deemed in privity with the bankrupt. *See generally,* 1B J. Moore, Moore's Federal Practice ¶ 0.419[3–6] (2d ed. 1980). It is clear however that privity between a trustee and a bankrupt is not complete.

786

In *Matter of Community Hospital of Rockland County,* 15 B.R. 785 (B.R.S.D.N.Y. 1981), the court held, *inter alia,* that a trustee was not barred under res judicata from seeking subordination of tax liens to priority claims pursuant to 11 U.S.C. § 724 merely because his predecessor debtor in possession had improperly attempted to utilize § 724 in his prior Chapter 11 reorganization case. Underlying this result was the finding of the bankruptcy court that § 724 was not previously available to the Chapter 11 trustee, nor to his predecessor in interest. However, the court went on to say:

> Although the trustee replaced the debtor in possession so that *they are in privity to the extent that their interests coincide,* their objectives, nevertheless, are different; the debtor in possession seeks to continue its economic life under the aegis of a reorganization, whereas the trustee in bankruptcy aims to terminate the estate's existence and distribute the property of the estate in accordance with the the concept of equality of distribution. (emphasis supplied).

*Supra,* at 787.

■ While it is true that Silver Mill as debtor in possession could have brought a preference action in its litigation with ITT and McMullin, its failure to do so should not per se bind Silver Mill's successor in interest. Privity "must be determined as a matter of substance and not mere form." 1B J. Moore, Moore's Federal Practice ¶ 0.411[1] at 1253 (2d ed. 1980).

> [O]ne must remember that the Bankruptcy Act empowers the trustee, under certain circumstances, to avoid judicial liens and preferential, fraudulent, and other proscribed transfers, for the benefit of the unsecured creditors he represents.... Thus, the idea of the trustee's privity with the bankrupt will not be pushed to the point that the estate is bound by judgments that would defeat the proper and just objectives of the Bankruptcy Act. 1B J. Moore, Moore's Federal Practice ¶ 0.419[3.–1] at 2968 (2d ed. 1980).

■ One of the guiding principles of the Bankruptcy Code is equality of distribution among unsecured creditors which is largely made enforceable by the avoiding powers under § 547. Clearly this principle would be placed in jeopardy if in situations such as here, where the debtor in possession had little incentive to bring a preference action, the hands of his successor were thereby tied. In the proceeding against ITT, Silver Mill was merely seeking to protect itself from contractual liability. Surely it was not to be expected that Silver Mill was representing the interests of the general unsecured creditors in such a proceeding. To now preclude Mr. Edleman, as trustee, from bringing this preference action would clearly and unjustly penalize the unsecured creditors to the advantage of McMullin, a favored creditor. Accordingly, this Court finds that Mr. Edleman is not in privity with Silver Mill for the purpose of bringing this § 547 action.

Third, the conclusive effect of res judicata is limited to the same cause of action. It operates in the interests of judicial economy and prevention of vexatious litigation to prevent splitting of a single cause of action into several lawsuits.

■ Under Michigan law, the central test in determining whether two proceedings involve the same cause of action is whether the same evidence would sustain both actions. 14 M.L.P. Judgment § 211 (1957). "In other words, if it is determined that the same evidence which is necessary to sustain the second action would have been sufficient to authorize recovery in the first, the prior judgment is a bar; otherwise it is not." *Id.* at 631. *See also, Sheridan Drive Association v. Woodlawn Backproperty Owners Association,* 29 Mich.App. 64, 68, 185 N.W.2d 107 (1970). The evidence that Mr. Edleman, as trustee, must prove to sustain this preference action are those elements contained in 11 U.S.C. § 547(b) including a showing that the two checks issued by Silver Mill to McMullin were "for or on account of an antecedent debt." Proof that Silver Mill owed an antecedent debt to McMullin by virtue of a credit sale

could not have conclusively determined ownership of the contracted cherries. Nor could evidence of ownership and priority to these cherries, such as when title passed and what interest and liens were had in them, conclusively establish a preference. In short, the same evidence could not be used to sustain a judgment in both actions. While there might be an overlapping issue in the two proceedings concerning the nature of the August, 1979, sale of cherries,[1] "that the evidence in both actions is in part the same does not establish identity of cause of action where the subject matter is essentially different." 46 Am Jur 2d Judgments, § 410 at 578 (1969).

A second test that is commonly used in determining the identity of a single cause of action is "whether the primary right and duty, and delict or wrong, are the same in each action. Under this test, there is but one cause of action where there is but one right in the plaintiff and one wrong on the part of the defendant involving that right." 46 Am Jur 2d, Judgments § 407 at 575 (1969). It appears that the "wrong" which gave rise to the first proceeding here involved was the nonpayment by Silver Mill of approximately $101,100 to McMullin which resulted in nondelivery of 4,714 pails of cherries to ITT. The right sought to be protected in that litigation was ITT's contractual right to delivery of these cherries. Silver Mill's crossclaim for indemnification against McMullin was simply incidental to the primary claims involved. The second suit brought by Mr. Edleman involves an entirely different situation however. The alleged wrong giving rise to Mr. Edleman's preference action is the issuance of two checks by Silver Mill within ninety days of bankruptcy, while the right sought to be protected is equality of distribution among the unsecured creditors. Clearly, the acts complained of and the demand for recovery are not the same.

Defendant argues however that cause of action has been broadly defined in Michigan to include "an entire claim or demand arising out of a single transaction, whether in the nature of contract or tort ..." 1 M.L.P. Action § 22 at 133 (1955). *See also,* Honigman & Hawkins, *Michigan Court Rules Annotated,* 474 Authors' Comments (2d ed. 1962). Such a "transactional" approach is of no avail to defendant in this case. Mr. Edleman is not seeking to enforce any contractual right or claim arising out of the August, 1979, sales agreement. Rather, his claim arises solely out of § 547 of the Bankruptcy Code. Furthermore, even if it could be said that this preference action indirectly arises out of the August, 1979, sales agreement, "[c]auses of action which are distinct and independent, although growing out of the same contract, transaction or state of facts ... may be sued on separately, and the recovery of judgment on one of such causes of action will not bar a subsequent action on the other." 14 M.L.P. Judgment § 222 at 644 (1957).

Accordingly, this Court finds that given the lack of identity of parties and causes of action here involved, res judicata and the doctrine against splitting a single cause of action are inoperative under the facts here present. McMullin's summary judgment motion is therefor denied.

---

1. Collateral estoppel, as distinguished from res judicata, bars relitigation of issues actually litigated in a prior proceeding between the same parties or privies where the second cause of action is different from the first cause of action. *Howell v. Vito's Trucking and Excavating Co.,* 386 Mich. 37, 191 N.W.2d 313 (1971). The Michigan Court of Appeals has defined the requirement of being "actually litigated" in *Sahn v. Brisson,* 43 Mich.App. 666, 204 N.W.2d 692 (1972) as the pleading submission to the trier of fact for determination, and the subsequent determination of an issue. Since the consent order rendered by this court on May 27, 1980, did not conclusively determine the issue of whether the August, 1980, contract between Silver Mill and McMullin was a credit sale or a cash sale, collateral estoppel cannot be applied in this case. Further, since this Court today holds that Mr. Edleman is not in privity with Silver Mill for the purpose of this preference action, he must have a full and fair opportunity to litigate this issue.