**In the Matter of GOOD TIME CHARLEY'S, INC., a corporation of the State of New Jersey, Debtor.**

**Peter W. RODINO, III, Trustee for Good Time Charley's, Inc., Plaintiff,**

**v.**

**Charles BARONDESS; Commercial Trust Company of New Jersey; Matthew Rinaldo; Anthony Rinaldo; the United States of America; the State of New Jersey; Zisman, Traurig & Elblonk; Kelson, Merves & Shorts; Summit & Elizabeth Trust Company; Norman Cohen and Gregory Lacuoce, t/a State Termite & Pest Control, Defendants.**

**Bankruptcy No. 83–0628.**

United States Bankruptcy Court, D. New Jersey.

July 31, 1984.

Paul Hollander, Okin, Pressler, Cohen & Hollander, Fort Lee, N.J., for debtor.

Charles Forman, Roseland, for trustee.

William Katchen, Ravin, Katchen & Greenberg, Roseland, N.J., for Creditors' Committee.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

In this adversary matter, the trustee of the above debtor, Good Time Charley's, Inc. (GTC), seeks to set aside a mortgage given by GTC to Charles Barondess. The trustee moves under § 544 of the Bankruptcy Code on the grounds that the mortgage constitutes a fraudulent conveyance within the scope of the New Jersey Corporations Act, N.J.S.A. 14A:14–10[2] & [3].

On April 6, 1977, Barondess sold 100 per cent of the stock of GTC to Victor Freda, Joseph Signorelli and James Freda for $230,000. Barondess received a cash payment of $30,000 at closing and the promissory note of GTC for the balance of the consideration, secured by a mortgage encumbering the debtor's principal asset, a bar restaurant facility in Roselle Park, New Jersey. The note provided for monthly payments of $1,742.24 through the initial 36 months commencing June 1, 1977; $1,974.46 for the following 24 months; $2,885.99 for the following 23 months, and a final balloon payment of $97,048.13.

In short, the transaction was essentially a sale of the GTC stock by Barondess to the Fredas and Signorelli, with the corporation executing a note for the unpaid balance of the purchase price, secured by a mortgage encumbering the corporate assets of GTC.

In the fall of 1979, Barondess learned that Victor Freda forged his (Barondess') signature on a document purporting to discharge the mortgage. On July 30, 1980, Barondess filed a complaint and order to show cause in the Superior Court of New Jersey, Chancery Division, seeking judgment (1) declaring the discharge void; (2) reinstating the mortgage as a first lien against subsequent lienholders; and (3) restraining the Fredas and Signorelli from acting on behalf of the corporation. In addition to these three individuals, the complaint named GTC and a number of individuals and entities who had acquired subsequent liens on the premises.

On October 17, 1980, an order of partial summary judgment was entered in the state court action in favor of Barondess and against all defendants, declaring in pertinent part:

[T]he Court having considered the pleadings filed in this action and the certifica-

tions and legal memorandum submitted in support of plaintiff's application and no responsive pleadings or certifications having been filed in opposition to said motion, and defendants James M. Freda and Goodtime Charley's, Inc. and Commercial Trust Company of New Jersey specifically citing no objection on the record, and the Court being of the opinion that no genuine issue as to any material fact has been shown to exist, and that the plaintiff, Charles Barondess, is entitled to partial summary judgment as a matter of law, it is on the 17th day of October 1980

ORDERED, that ... the discharge of plaintiff's first mortgage ... is declared to be a nullity and that plaintiff's first mortgage be and hereby is reinstated of record ... and that the said mortgage be and hereby is declared to be a first and paramount lien as against all subsequent lienholders, mortgagees and encumbrancers

....

On January 23, 1981, GTC filed a petition under Chapter 11 of the Code, subsequently converted to one under Chapter 7 in April of 1983. In July of 1983, the trustee filed this action to set aside the mortgage as a fraudulent conveyance under 11 U.S.C. § 544 and N.J.S.A. 14A:14–10[2] & [3].

The Court deals initially with the threshold issue of whether, as contended by defendant Barondess, the state court judgment, by reason of the principles of collateral estoppel or res judicata or the entire controversy doctrine, bars the trustee from voiding the mortgage.

As a general rule, bankruptcy courts apply the doctrines of collateral estoppel, res judicata and related doctrines to determine the preclusive effects of judgments rendered by other courts. *See Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 653, 90 L.Ed. 970 (1946); 1B J. Moore, *Moore's Federal Practice* ¶ 0.419[3–6] at 672–73 (2d ed. 1983). Furthermore, 28 U.S.C. § 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgment emerged." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *see In the Matter of Farrell,* 27 B.R. 241, 243 (Bankr.E.D.N.Y.1982).

■ The doctrine of collateral estoppel operates to bar relitigation of an issue in a subsequent proceeding between parties or their privies where the issue was " 'distinctly put in issue' and 'directly determined' adversely to the party against which the estoppel is asserted." *New Jersey-Philadelphia Presbyterian Church v. New Jersey Board of Education,* 654 F.2d 868, 876 (3d Cir.1981), *citing, Plainfield v. Public Service Gas & Electric,* 82 N.J. 245, 257–58, 412 A.2d 759 (1980); *see Washington Township v. Gould,* 39 N.J. 527, 533, 189 A.2d 697 (1963). The Court has little difficulty in concluding that collateral estoppel does not bar the trustee from voiding the mortgage under N.J.S.A. 14A:14–10[2] & [3]. Aside from the question of whether the trustee is a privy of the pre-petition corporation, it is apparent that the issue of whether the mortgage was a fraudulent conveyance was not addressed in the earlier state court action.

The doctrine of res judicata bars relitigation by parties or their privies of "[a] cause of action once finally determined between parties on the merits by a tribunal having jurisdiction...." *Roberts v. Goldner,* 79 N.J. 82, 85, 397 A.2d 1090 (1979). *See Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 587 (3d Cir.1975). Unlike collateral estoppel, which precludes litigation of issues actually decided, res judicata is conclusive "as to the claim or demand in controversy ... not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Donegal, supra, citing, Mazzilli v. Accident & Casualty Insurance Co.,* 26 N.J. 307, 139 A.2d 741 (1958).

■ As with collateral estoppel, res judicata does not bar the trustee from assert-

ing N.J.S.A. 14A:14–10[2] & [3] as grounds for voiding the mortgage. The cause of action in the state court was based on events occurring at a time following the execution of the mortgage, specifically, the fraudulent conduct of Victor Freda. In contrast, the action here considered is premised on the mortgage transaction itself, totally unrelated to the facts giving rise to the wrong complained of in the state court proceeding. Moreover, while the right to challenge the validity of the mortgage on the grounds that it lacked consideration was available to GTC, *see Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 169, 459 A.2d 1163 (1983), since the fraudulent conveyance provisions are intended to set aside an otherwise valid transfer for the benefit of creditors of an insolvent corporation, GTC could not have raised those statutory provisions in this action by way of defense.

The final doctrine of preclusion raised by Barondess is the single, entire controversy or law of the case doctrine, which "requires that a party include in the action all related claims against an adversary and its failure to do so precludes the maintenance of a second action." *Aetna Insurance Co. v. Gilchrist Brothers, Inc.*, 85 N.J. 550, 556–57, 428 A.2d 1254 (1981). It "requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding." *William Blanchard Co. v. Beach Concrete Co.*, 150 N.J.Super. 277, 292–93, 375 A.2d 675 (App.Div.), *certif. den.* 75 N.J. 528, 384 A.2d 507 (1977). The point of the single controversy doctrine "is that a component of the controversy may not be unfairly withheld ... and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ball game." *William Blanchard Co., supra*, 150 N.J.Super. at 294, 375 A.2d 675.

■ Though the single controversy is broad in scope, it does not bar the trustee from pressing his claim in this action. As noted earlier, GTC could not have asserted the fraudulent conveyance provisions relied on by the trustee in this action as grounds for denying the relief sought by Barondess in the prior state court action. Thus, no defense was unfairly withheld in the prior action. To use the terminology of the court in *William Blanchard Co., supra*, the litigation presently before this Court is a new "ball game".

Though neither of the parties addressed the question of whether the trustee is a privy to the prepetition corporation for purposes of issue or claim preclusion, the Court has considered it. It is true that "[t]he trustee in bankruptcy is a successor to the bankrupt's property and for many purposes is deemed in privity with the bankrupt." *Edleman v. McMullin Orchards (In the Matter of Silver Mill Frozen Foods, Inc.)*, 32 B.R. 783, 785 (Bankr. W.D.Mich.1983). *See also* 1B J. Moore, *Moore's Federal Practice* ¶ 0.419[3–6] (2d ed. 1983). As stated in *Edleman, supra*, "[i]t is clear however that privity between a trustee and a bankrupt is not complete." *Also see L.M. Ericsson Telecommunications, Inc. v. Teltronics Services, Inc. (In re Teltronics Services, Inc.)*, 18 B.R. 705 (E.D.N.Y.1982).

As noted in *Teletronics Services, supra*, at 706, "[s]ubstance rather than form determines the scope of identity of parties."

■ In this case, the trustee is seeking to protect the rights of creditors who did not have the opportunity to challenge the mortgage in the state court proceeding. The interests of GTC at stake in the state court action were distinct from those of the creditors in this case. The fraudulent conveyance provisions relied on by the trustee would not have been of any help to GTC in the prior proceeding. Thus, it would not be logical to preclude the trustee from litigating the fraudulent conveyance issue because of GTC's failure to raise it in the prior proceeding. In short, the trustee is not a privy to the prepetition debtor for the purposes of this proceeding. Accordingly, neither collateral estoppel, res judicata, nor the single controversy doctrine bars the trustee's action.

We turn now to the merits of the matter. The trustee, pursuant to his voiding power under 11 U.S.C. § 544, argues that the mortgage given by GTC to Barondess falls within the fraudulent conveyance provisions of the New Jersey Corporations Act, specifically, N.J.S.A. 14A:14–10[2] & [3], which provide:

[2] Every transfer made without fair consideration when the corporation making it is engaged or is about to engage in a business or transaction for which the property remaining in its hands after the transfer is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to its actual intent.

[3] Every transfer made and every obligation incurred without fair consideration when the corporation making the transfer or entering into the obligation intends to or believes that it will incur debts beyond its ability to pay as they mature, is fraudulent as to both present and future creditors.

Invalidation of a mortgage under paragraphs 2 and 3 requires an initial finding that the transfers at issue were made without fair consideration. As the court stated in *Roxbury State Bank v. The Clarendon*, 129 N.J.Super. 358, 373–74, 324 A.2d 24 (App.Div.), *cert. den.* 66 N.J. 316, 331 A.2d 16 (1974), *quoting* N.J.S.A. 14A:14–1[e], "To be fair consideration, what the corporation gets in return for what it gives up by the 'transfer' ... must be 'a fair equivalent therefor' or 'not disproportionately small' and exchanged in 'good faith.' "

■ Undoubtedly, the purchasers of the GTC stock received a benefit in exchange for the mortgage. If the issue in this case was limited to whether the mortgage was void for lack of consideration, it is clear that the mortgage would be enforceable notwithstanding the absence of a direct benefit flowing to the corporation. *See Barclay Riding Academy, Inc., supra,* 93 N.J. at 157, 459 A.2d 1163 ("It is immaterial that the benefit of the exchange runs to a designated third party beneficiary."). The question here, however, is not whether the mortgage is void, but whether it is voidable under the fraudulent conveyance provisions of N.J.S.A. 14A:14–10[2] & [3].

To escape the effect of 14A:14–10[2] & [3], the corporation giving a mortgage must receive fair consideration. Any benefit to a third party is not factored into the fair consideration equation. *See Roxbury supra,* and *Hartwell v. Hartwell Co., Inc.,* 167 N.J.Super. 91, 98, 400 A.2d 529.

In *Roxbury,* the owners of a corporation sold the stock to two individuals for $300,000. The sellers received $50,000 in cash and took back a second mortgage executed by the corporation securing the underlying mortgage note. In addition, the sellers turned over to the corporation a liquor license and a parking lot. In discussing the question of fair consideration, the *Roxbury* court, 129 N.J.Super. at page 374, 324 A.2d 24, stated that "[t]he corporation received ... only a liquor license and a plot of land." Although the purchasers received the benefit of the stock, the court did not consider it a benefit to the corporation in determining whether the fair consideration requirement had been met.

Similarly, in *Hartwell,* the owners of a corporation sold the stock to two individuals for $25,000, taking back a security interest in all the assets of the corporation securing the purchasers' note obligation for the entire purchase price. The sellers additionally forgave a debt of $17,622.45 owed to them by the corporation. The court concluded that the benefit received by the corporation for the purpose of the fair consideration test was the forgiveness of the debt. Accordingly, the security interest was deemed a fraudulent conveyance to the extent that it exceeded the value of the benefit. As in *Roxbury,* the court did not consider the transfer of the stock to the purchasers as consideration for the security agreement.

Applying the *Roxbury* and *Hartwell* rationale, this Court concludes that GTC did not receive fair consideration for the mortgage. In fact, GTC did not receive any consideration.

Having determined that the initial requirement for application of N.J.S.A. 14A:14–10[2] & [3] has been satisfied, the Court turns to the remaining elements. Under [2], it is necessary to show that the property remaining in GTC's hands after the transfer was "unreasonably small capital" for the continuation of the business operation; under [3], the trustee is required to demonstrate that the corporation intended or believed it would incur debts beyond its ability to pay as they matured. A review of the record indicates that the trustee failed to present evidence to establish either of the above criteria. Accordingly, the mortgage may not be set aside under the fraudulent conveyance provisions of the New Jersey Corporations Act.

To summarize, the prior state court judgment does not bar the trustee from seeking to set aside the mortgage; however, the mortgage is declared to be valid by reason of the trustee's failure to establish the requisite elements of N.J.S.A. 14A:14–10[2] & [3].

Submit an order in accordance with the above.