CUDAHY, Circuit Judge.
 

 Energy Cooperative, Inc. (“ECI”) appeals the dismissal of its suit against Phillips Petroleum Company (“Phillips”) to recover more than $7.3 million which ECI claims is a voidable preference under section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b) (1982). We conclude that this cause of action is barred by res judicata and accordingly affirm the decision of the district court.
 

 I.
 

 ECI operated a petroleum refinery in East Chicago, Indiana. In the course of its business, ECI traded petroleum products pursuant to “exchange agreements” with other oil companies, including the defendant-appellee, Phillips. Under these exchange agreements, ECI
 

 agreed to deliver various types of crude oil, refined oil and/or other oil and petroleum products to various suppliers, refineries and/or distributors at various locations throughout [t]he United States ... in exchange for the respective agreements of such suppliers, refineries and/or distributors to deliver such crude oil, refined oil and/or other oil and petroleum products to ECI.
 

 In re Energy Cooperative, Inc.,
 
 No. 81-B-005811 (Bankr.N.D.Ill. June 19, 1981) (the “Compromise Authorization Order”).
 

 ECI filed a voluntary petition in bankruptcy under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101
 
 et seq.
 
 (1982),
 
 [1]
 
 on May 15, 1981. The company operated as debtor-in-possession under chapter 11 until May 31, 1984 when the case was converted to a proceeding under chapter 7.
 

 On June 19, 1981, the bankruptcy court entered an order authorizing ECI to compromise, settle and collect balances that were owed to it under its pre-bankruptcy exchange agreements. Compromise Authorization Order. The court found that, due to falling oil prices, swift settlement of the exchange agreements was in the best interests of ECI and its creditors.
 
 Id.
 
 at 7. The order provided, in relevant part, as follows:
 

 IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:
 

 1. That the Debtor be, and it hereby is, authorized, without any appraisal or further notice to, hearing, or approval by, this Bankruptcy Court, or any creditors, entities, or parties in interest:
 

 (i) to effect and authorize the taking by the Exchange Partners of various set-offs arising from any business dealings of ECI with the Exchange Partners, to which the Exchange Partners may be entitled;
 

 (ii) to negotiate and agree with each of the Exchange Partners upon a final settlement and liquidation of the obligations remaining under each respective Exchange Agreement; and
 

 (iii) where appropriate, to adjust and compromise any disputed amounts or obligations owing under the Exchange Agreements; provided, that the Debtor shall make no adjustment, compromise or settlement of any amounts or obligations owing under the Exchange Agreements, which adjustment, compromise or settlement, if it had been made prior to the commencement of this reorganization case, could be avoided by the Debtor or a trustee,
 
 *1229
 
 pursuant to applicable provisions of the Bankruptcy Code[.]
 

 Id.
 
 at 9-10. Subparagraph (iii) was modified on July 23, 1981 by order of the bankruptcy court to clarify its scope and extent.
 
 In re Energy Cooperative, Inc.,
 
 No. 81-B-005811 (Bankr.N.D.Ill. July 23, 1981). The amendment of this provision became effective,
 
 nunc pro tunc,
 
 as of June 19, 1981, and provided:
 

 (iii) where appropriate, to adjust and compromise any disputed amounts or obligations owing under the Exchange Agreements, provided, however, that the Debtor has no authority to settle, adjust or compromise any claim, cause or right, which claim, cause or right could form the basis of any cause of action which may be brought pursuant to any avoiding or recovery provisions of the
 
 Bankruptcy Code.
 

 Id.
 
 at 3.
 

 Acting pursuant to the Compromise Authorization Order, ECI attempted to collect an exchange account balance due from Phillips.
 
 [2]
 
 The parties did not dispute the amount owed, only the form of payment. Phillips declined to pay ECI in cash, claiming that under the terms of their exchange agreement, ECI was only entitled to delivery of product. ECI then filed a complaint in bankruptcy court alleging that Phillips owed ECI $1,564,666.97 for petroleum that ECI had over-delivered to Phillips under the exchange agreement. Complaint to Recover Exchange Balance ¶ 6. ECI subsequently agreed to accept delivery of product in settlement of this action, and the suit was dismissed on ECI’s motion on September 22, 1982.
 
 In re Energy Cooperative, Inc.,
 
 No. 81-B-05811 (Bankr.N.D.Ill. Sept. 22, 1982). The order dismissing the suit stated that the proceeding was dismissed “with prejudice” and did not provide that ECI reserved the right to litigate any other issues arising from its exchange agreement in subsequent suits involving Phillips.
 

 On October 14, 1982, ECI filed a complaint against Phillips which forms the basis of the suit before us.
 
 [3]
 
 ECI seeks recovery of $7,320,762.00 that it transferred to the defendant on account of debts owed by ECI under their exchange agreement. Complaint to Recover Preferential Transfer ¶ 6. The theory of ECI’s present suit is that the money transferred by ECI was a preference under section 547(b) of the Bankruptcy Code, 11 U.S.C. 547(b) (1982), and the transfer was, therefore, voidable by ECI.
 
 Id.
 
 119. Phillips subsequently moved to dismiss the proceeding as res judicata, contending that the dismissal of the earlier suit to collect the exchange account balance barred any further litigation arising out of Phillips’ exchange agreement with ECI.
 

 On November 7, 1985, the district court, which had assumed jurisdiction by withdrawing the reference of this case to the bankruptcy court, granted Phillips’ motion on the basis of both res judicata and equitable estoppel.
 
 In re Energy Cooperative, Inc.,
 
 Nos. 81-B-5811, 82-A-3736, 85-C-3556 (N.D.Ill. Nov. 7, 1985) (“Transcript of Proceedings”). With respect to equitable estoppel, the court found that ECI never claimed during the pendency of the account balance suit that it was entitled to recover the $7.3 million that it had previously transferred to Phillips. Accordingly, if Phillips had been made aware that ECI intended to assert this preference claim, it would have recognized its status as a creditor of ECI and would never have transferred $1.5 million of petroleum products to the bankrupt in the account balance settlement. The court found that the present suit was also barred by res judicata because the alleged preference arose out of
 
 *1230
 
 the same exchange agreement that was the subject of the earlier suit. On January 29, 1986, the district court denied the trustee’s motion to vacate its earlier ruling granting Phillips’ motion to dismiss.
 
 In re Energy Cooperative, Inc.,
 
 Nos. 85-C-3556, 81-B-5811, 82-A-3736, mem. op. (N.D.Ill. Jan. 29, 1986) (“mem. op.”). This appeal followed.
 

 II.
 

 Because the prior litigation was brought in federal court, the federal rule of res judicata determines whether the account balance suit bars ECI from maintaining this action.
 
 See Restatement (Second) of Judgments
 
 § 87 (1982); 18 C. Wright, A. Miller, E. Cooper,
 
 Federal Practice and Procedure
 
 § 4466 (1981); Degnan,
 
 Federalized Res Judicata,
 
 85 Yale L.J. 741, 769 (1976).
 

 For res judicata to apply, three requirements must be met: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits.
 
 Federated Dep’t Stores, Inc. v. Moitie,
 
 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981);
 
 see also Car Carriers, Inc. v. Ford Motor Co.,
 
 789 F.2d 589, 595 n. 9 (7th Cir.1986); 1B J. Moore, J. Lucas, T. Currier,
 
 Moore’s Federal Practice
 
 ¶¶ 0.410[1], 0.411[1] (2d ed. 1984). The only disputed requirement in this case is whether there is a sufficient identity of the causes of action.
 

 The district court, in dismissing ECI’s suit, applied the “operative facts” or “same transaction” test to define “cause of action,” Transcript of Proceedings at 5-6, which is the dominant definition applied in this circuit. Under this test, a “cause of action” consists of “ ‘a core of operative facts’ which give rise to a remedy.”
 
 Car Carriers,
 
 789 F.2d at 593 (quoting
 
 Alexander v. Chicago Park Dist.,
 
 773 F.2d 850, 854 (7th Cir.1985),
 
 cert. denied,
 
 — U.S. -, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986));
 
 see also Mandarino v. Pollard,
 
 718 F.2d 845, 849 (7th Cir.1983),
 
 cert. denied,
 
 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984);
 
 Harper Plastics, Inc. v. Amoco Chemicals Corp.,
 
 657 F.2d 939, 944 (7th Cir.1981).
 

 ECI contends that we should apply an ostensibly narrower definition of “cause of action” than that applied by the district court. According to ECI, to determine whether two suits arose out of a common core of operative facts, the appropriate question is whether the same evidence could support both claims. Appellant’s Brief at 23-25. ECI also argues that we should apply a second test, apart from the operative facts test, under which the similarity of the claims is assessed with emphasis on the source of the rights and injuries at issue.
 
 Id.
 
 at 30. To support its position, ECI relies primarily on cases applying Illinois res judicata law, which employ these narrower formulations of the standard for claim preclusion.
 
 See, e.g., Redfern v. Sullivan,
 
 111 Ill.App.3d 372, 376, 67 Ill.Dec. 166, 444 N.E.2d 205, 208 (4th Dist.1982);
 
 City of Elmhurst v. Kegerreis,
 
 392 Ill. 195, 205-06, 64 N.E.2d 450, 454 (1945).
 
 [4]
 

 As noted, however, because the prior suit in this case was adjudicated in federal court, the federal res judicata law governs, and the federal rule seems less demanding than that applied by the Illinois cases cited by ECI. This court recently endorsed the approach of section 24 of the
 
 Restatement (Second) of Judgments
 
 (1982): “Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost.”
 
 *1231
 

 Car Carriers,
 
 789 F.2d at 593.
 
 [5]
 
 This is, therefore, the approach we apply here.
 
 [6]
 
 Applying the federal definition of “cause of action,” the district court concluded that the account collection litigation and the present suit arose out of the same core of operative facts because “the rights and obligations of the parties under the exchange agreements were a necessary factual underpinning for the preference case and were fully settled in the first lawsuit.” Mem. op. at 3-4. We agree that the present suit is barred because it involves the same “cause of action” as the account balance suit. Both claims arose out of the same transaction, the exchange of petroleum products between ECI and Phillips pursuant to their exchange agreement. The first suit alleged that ECI over-delivered petroleum products to Phillips under the agreement, and the present suit contends that ECI can set aside as a voidable preference payments by ECI for product delivered by Phillips under the agreement.
 
 [7]
 
 Both the account balance claim and the preference claim involve the reconciliation of the balance of the exchange agreement. The contract claim is for the total balance; the preference claim asks the court to look at transactions for the last 90 days only and net these out. Because each claim seeks to reconcile the parties’ obligations under their contract and because the time periods covered by the two claims overlap, we conclude that the two arise out of the same transaction.
 

 The link between the two claims is also supported by the relationship between the claims and Phillips’ right of setoff. Phillips contends that if we were to allow ECI
 
 *1232
 
 to split its claims, Phillips would be unable to raise as a defense its right to offset the amount it owed ECI for over-delivery of product against the approximately $7.3 million ECI would owe Phillips if that amount were set aside as a voidable preference. The district court relied on the potential prejudice to Phillips’ setoff right, noting that “[h]ad Phillips known that ECI intended to assert its right to avoid the preferential transfers, Phillips would have recognized its status as a creditor, rather than a debtor, of ECI. Instead, Phillips transferred $1.5 million worth of petroleum products to ECI.” Transcript of Proceedings at 5.
 

 ECI contends that Phillips did not have the right to offset the amount it owed ECI under the exchange agreement against the $7.3 million ECI would owe Phillips if that amount were set aside as a voidable preference. ECI argues that Phillips’ right to setoff arises under section 553(a) of the Bankruptcy Code. Section 553(a) provides, in relevant part:
 

 Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....
 

 11 U.S.C. 553(a) (1982). While Phillips’ debt to ECI clearly arose pre-petition, ECI argues that its debt to Phillips arose post-petition: “Obviously, a claim arising from the post-petition avoidance of a preference cannot have arisen pre-petition.” Appellant’s Reply Brief at 20.
 

 Phillips relies on
 
 In re
 
 Nepsco,
 
 Inc.,
 
 55 B.R. 574 (Bankr.D.Me.1985), to establish that it would have been able to assert a right of setoff had ECI raised the preferential transfer claim in the earlier suit. In
 
 Nepsco,
 
 the trustee sued Contractors Group, Inc. (“CGI”) seeking to recover preferential transfers in the amount of $6,221.56 allegedly made by the debtor to CGI. CGI owed the debtor $7,250.00 arising from pre-petition debts. CGI contended that the trustee met his burden of proof on all the elements necessary to recover a preferential transfer, except for the requirements of 11 U.S.C. § 547(b)(5). Section 547(b)(5) provides that the trustee may avoid a transfer of the debtor’s interest in property
 

 (5) that enables such creditor to receive more than such creditor would receive if—
 

 (a) the case were a case under chapter 7 of this title;
 

 (b) the transfer had not been made; and
 

 (c) such creditor received payment of such debt to the extent provided by the provisions of this title.
 

 11 U.S.C. § 547(b)(5) (1982). CGI’s position was that if it did not receive the alleged preferential transfers, it would have had the right under section 553(a) to offset the amount it owed the debtor against the amount the debtor allegedly owed CGI. The trustee in
 
 Nepsco
 
 raised the same argument advanced by ECI in this case: “The trustee claims that as a result of the preferential transfers, CGI had no claim against the debtor’s estate at the time of the filing of the Chapter 7 petition and therefore had no claim which would be the subject of a setoff under 11 U.S.C. § 553.” 55 B.R. at 575-76. The court rejected the trustee’s argument, reasoning that the sole issue before it was “whether CGI, in receiving the pre-filing payments from the debtor, received more than it would have received had the payments not been made.”
 
 Id.
 
 Section 553 was relevant only to the extent that it bore on the question of what CGI would have been entitled to had the alleged preferential transfers not been made. If the debtor had not paid its pre-petition debt of $6,221.56 to CGI, CGI would have been entitled to a right of set-off under section 553(a).
 

 The reasoning in
 
 Nepsco
 
 supports the conclusion that in the case before us the two suits involve the same cause of action.
 
 *1233
 
 Had ECI raised the preference issue in its account balance suit, Phillips could have asserted its right to offset the $1.5 million balance it owed ECI under their exchange agreement against the $7.3 million ECI would owe Phillips if that amount were set aside as a voidable preference. The net result would be that Phillips would have to transfer a total of $7.3 million as a preference, and ECI would owe Phillips $5.8 million (the $7.3 million it would owe Phillips at the time Phillips repays that amount less the $1.5 million Phillips owed it). . Phillips claims that it lost its setoff right once it transferred the $1.5 million to ECI in settlement of the first suit. Thus, if we allow ECI to split its claims, Phillips must transfer a total of $8.8 million to ECI (the sum of $7.3 million and $1.5 million), and ECI would owe Phillips the total amount returned as a voidable preference, $7.3 million. If Phillips has indeed lost its right of setoff, Phillips would obviously be placed in a worse position by ECI’s splitting of its claims.
 
 [8]
 

 III.
 

 ECI contends that even if the two suits involve the same cause of action, this case must be distinguished from the normal operation of the doctrine of res judica-ta because the bankruptcy court reserved ECI’s right to bring voidable preference claims. If a court reserves for later resolution an issue that might otherwise have been adjudicated in the initial proceeding, res judicata will not operate to bar the subsequent suit.
 
 See Restatement (Second) of Judgments
 
 § 26(l)(b), comment b (1982). According to ECI, the Compromise Authorization Order issued by the bankruptcy court effectively reserved its right to bring this later suit. The bankruptcy court, through its order, authorized ECI to settle the account balance claims because of the need for prompt action resulting from the declining oil price, but the court set aside any other claim “which may be brought pursuant to any avoiding or recovery provisions of the
 
 Bankruptcy Code,”
 
 including preference claims, for later disposition. Compromise Authorization Order § l(iii). ECI argues that neither the bankruptcy court nor the parties believed at the time the account balance suit was settled that any further litigation between the parties arising from the exchange agreement would be precluded. ECI contends that it did not believe that it had the authority to compromise voidable preference claims under the order and that Phillips was aware of the order and its limitations on ECI’s settlement powers. ECI also argues that the bankruptcy court, by approving settlement of the account balance suit, did not intend to prevent ECI from bringing this later suit; had the court believed that the earlier suit would settle all claims between ECI and Phillips arising out of the exchange agreement, including more than $7.3 million worth of preference claims, the court would have informed ECI’s other creditors and would have held a hearing to determine that settlement of the claims was in the best interests of the bankrupt and its creditors.
 

 Phillips contends that although it had notice of the Compromise Authorization Order at the time it settled the account balance suit with ECI, it did not interpret this order as preventing ECI from settling its preference claims against Phillips. Under Phillips’ interpretation of the order, ECI
 
 *1234
 
 was only prohibited from compromising preference claims with exchange partners who disagreed with ECI as to the amounts due under the exchange agreements. The restriction on ECI’s ability to compromise claims other than account balances is contained in section l(iii) of the order that authorizes ECI “to adjust and compromise any disputed amounts or obligations owing under the Exchange Agreements.” Compromise Authorization Order § l(iii). Section 1(H), which does not contain a similar restriction, authorizes ECI “to negotiate and agree with each of the Exchange Partners upon a final settlement and liquidation of the obligations remaining under each respective Exchange Agreement.”
 
 Id.
 
 § l(ii). Phillips contends that because section l(ii) did not contain a restriction comparable to that found in section l(iii), ECI was not prohibited from settling preference claims in conjunction with account balances settled under section l(ii). Phillips further argues that because it and ECI did not dispute the amount at issue under their exchange agreement, they settled their exchange balance pursuant to section l(ii) of the order, and ECI thus also compromised its preference claims against Phillips when it agreed to settlement of the first suit. Phillips believes that the dichotomy in ECI’s authority set up in section l(ii) and section l(iii) is explained by the fact that if “ECI and its exchange partner agreed as to the amount due [this] would be some insurance that the estate was receiving all it was entitled to.” Appellee’s Brief at 24.
 

 Phillips’ interpretation of the Compromise Authorization Order is not persuasive. Whether ECI may give up more than $7.3 million worth of preferences cannot reasonably be predicated on whether ECI and its exchange partner agree on the amount owed under their exchange agreement. If ECI and Phillips agree on the exchange balance amount, there is some assurance that the bankrupt is getting everything to which it is entitled with respect to the exchange balance claim. Agreement does not ensure, however, that the bankrupt is getting everything to which it is entitled with respect to other claims,_ including preferences. Further, even if we were to accept Phillips’ interpretation of the order, we would still find that ECI was not authorized to compromise its preference claims against Phillips. Section l(iii) of the order authorized ECI “to adjust and compromise any disputed amounts
 
 or obligations
 
 owing under the Exchange Agreements.” Compromise Authorization Order § l(iii) (emphasis added). While the parties did not dispute the
 
 amount
 
 owing under their agreement, they did dispute the
 
 obligation.
 
 Their quarrel with the obligation involved whether payment should be made in the form of cash or petroleum products. Thus, ECI was not authorized by the Compromise Authorization Order to settle any preference claims it might have against Phillips.
 

 The most plausible interpretation of the Compromise Authorization Order is that the bankruptcy court intended to prohibit ECI from compromising any claim arising under the Bankruptcy Code, whether or not the parties disputed their obligations under the exchange agreements. Nonetheless, it is inescapable that, although the Compromise Authorization Order prohibited ECI from settling its preference claims, this order was modified as to Phillips when the court approved the settlement of the account balance suit “with prejudice.” In settling the account balance suit, the burden was on ECI to preserve any further claims it might assert against Phillips arising out of their exchange agreement. If the order dismissing the first suit had not indicated that it was dismissed with prejudice, the reservation in the Compromise Authorization Order might have been sufficient to reserve ECI’s right to bring subsequent suits. The order dismissing the account collection case, however, was not silent on the question of ECI’s right to pursue future claims against Phillips. The suit was dismissed “with prejudice',” indicating that the order barred any subsequent suits on the same cause of action.
 
 See, e.g., Phillips v. Shannon,
 
 445 F.2d 460, 462 (7th Cir.1971) (“ ‘[A] dismissal with prejudice is a final judgment on the merits
 
 *1235
 
 which will bar a second suit between the same parties for the same cause of action.’ ”) (quoting
 
 Cleveland v. Higgins,
 
 148 F.2d 722, 724 (2d Cir.),
 
 cert. denied,
 
 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428 (1945));
 
 Pfeiffer Co. v. United States,
 
 385 F.Supp. 367, 371 (E.D.Mo.1974),
 
 aff'd,
 
 518 F.2d 124 (8th Cir.1975).
 
 [9]
 
 Thus, while the Compromise Authorization Order reserved ECI’s right to assert preference claims, the order was modified as to Phillips by the court’s dismissal of the account balance litigation with prejudice.
 
 [10]
 

 An alternative, and at least equally valid, interpretation of the Compromise Authorization Order (although one not raised by either party) is that the order did not authorize ECI to split its claims. The order, by its terms, gave ECI the power to
 
 settle
 
 its account balance claims “without any appraisal or further notice to, hearing, or approval by, this Bankruptcy Court, or any creditors, entities, or parties in interest.” Compromise Authorization Order § 1. Pursuant to this order, ECI initially attempted to settle its account balance claim with Phillips without the participation of the bankruptcy court; ECI filed suit only after private settlement negotiations failed. If the two parties had been able to settle the contract claim without the participation of the court, ECI, under the terms of the Compromise Authorization Order, would not have been able to compromise any other claim it might have against Phillips arising out of their exchange agreement. Once ECI determined that it must file suit to recover the account balance due it, the Compromise Authorization Order and its attempted reservation of claims did not apply because that order focuses on ECI’s attempt to
 
 settle
 
 only and not on lawsuits that ECI might file to bring about a resolution of the disputes. Viewed in this light, the Compromise Authorization Order has nothing directly to do with the complaint that ECI filed or with the disposition of the action based on it. Thus, ECI is barred by res judicata from bringing its preference claim because it did not raise this claim' in its complaint in the contract suit.
 

 IV.
 

 Because we conclude that this suit is barred by res judicata, we need not consider whether ECI is equitably estopped from bringing this suit. The judgment of the district court is
 

 Affirmed.
 

 [1]
 

 . Because ECI filed its bankruptcy petition prior to the effective date of the 1984 amendments to the Bankruptcy Code, the bankruptcy issues in this case are governed by the Code prior to its amendment. The citations to the Code will be to its pre-amendment version.
 

 [2]
 

 . There seems to be some confusion as to the number of exchange agreements between ECI and Phillips. Phillips refers to an exchange agreement in its brief. ECI’s complaint in this proceeding, on the other hand, discusses multiple agreements. The resolution of this discrepancy is not critical to the determination of the questions before us. For the sake of convenience, we shall refer to a single agreement between the parties.
 

 [3]
 

 . ECI, as debtor-in-possession, filed the complaint in the instant proceeding. Thereafter, the bankruptcy case was converted to a proceeding under chapter 7, and a trustee was appointed on July 12, 1984. For the sake of convenience, we shall continue to refer to the appellant as "ECI.”
 

 [4]
 

 . Although ECI contends that Illinois courts apply a narrow definition of “cause of action,” Illinois case law is not as monolithic as ECI implies. As we recently noted in
 
 Hagee v. City of Evanston,
 
 729 F.2d 510, 513 (7th Cir.1984), the decisions of the Illinois appellate courts on this question seem to break down into two camps. In the first group are those cases such as
 
 Redfern v. Sullivan,
 
 111 Ill.App.3d 372, 376, 67 Ill.Dec. 166, 444 N.E.2d 205, 208 (4th Dist. 1982), that look to the overlap in the proof or evidence necessary to sustain both claims. The second group of cases employs the broader transactional approach,
 
 see, e.g., Radosta v. Chrysler Corp.,
 
 110 Ill.App.3d 1066, 1069, 66 Ill.Dec. 744, 747, 443 N.E.2d 670, 673 (1st Dist. 1982). Because we conclude that federal law defines "cause of action” in this case, we need not opt between these competing strands of Illinois case law.
 

 [5]
 

 . The approach of the
 
 Restatement (Second) of Judgments
 
 has become "the present trend among courts nationwide.” IB J. Moore, J. Lucas, T. Currier,
 
 Moore’s Federal Practice
 
 ¶ 0.410[1], at 359 (2d ed. 1984) (footnote omitted).
 

 [6]
 

 . Although the plaintiff does cite several cases from this circuit in support of its position, none of these cases persuades us that we should apply the apparently narrower definition of "cause of action" encompassed by the "same evidence" or “right/duty" formulations.
 

 Thus, in
 
 Kernel Kutter, Inc. v. Fawcett Publications, Inc.,
 
 284 F.2d 675 (7th Cir.1960), the plaintiff claimed that he was injured by the defendant’s publication of a fishing method previously sold by the plaintiff through advertisement in defendant’s magazine. The plaintiff initially brought two counts, one based on libel and one based on wrongful public disclosure of confidentially imparted trade information. The court simply held that the dismissal of one count because it was brought outside of the applicable statute of limitations was not res judicata as to the other count which was governed by a longer statute of limitations.
 
 Lee v. City of Peoria,
 
 685 F.2d 196 (7th Cir.1982), is equally unhelpful to the plaintiff because the court there was applying Illinois res judicata law. The plaintiff’s reliance on
 
 Himel v. Continental Illinois Nat'l Bank and Trust Co.,
 
 596 F.2d 205 (7th Cir.1979), is similarly misplaced. The test applied by the court in that case was whether “both suits arise out of the same basic factual situation."
 
 Id.
 
 at 209. Although
 
 Harper Plastics, Inc. v. Amoco Chemicals Corp.,
 
 657 F.2d 939 (7th Cir.1981), does suggest that the "right/duty” approach is an acceptable methodology, that case treated that method of analysis as a secondary approach and referred to the "transactional approach" as the "primary test.”
 
 Id.
 
 at 944. We also agree with the recent opinion in
 
 Car Carriers
 
 in which this court said that
 

 an unsuccessful party ought not be able to "frustrate the doctrine of
 
 res judicata
 
 by cloaking the same cause of action in the language of a theory of recovery untried in the previous litigation.” 657 F.2d at 945. Therefore, the "right-duty” approach should not be used as a substitute for the “same transaction” test absent compelling circumstances and a clear showing that such a substitution will not undermine the policies of res judicata.
 

 789 F.2d at 594-95 (quoting
 
 Harper Plastics,
 
 657 F.2d at 945). No such showing Has been made in this case.
 

 [7]
 

 .Contrary to ECI’s assertion, Appellant’s Brief at 33, the fact that this suit was brought under the preference provisions of section 547(b) of the Bankruptcy Code and the prior proceeding was a contract suit does not mean that the two suits are separate causes of action. The fact that the claims have different legal bases does not by itself create separate causes of action.
 
 See Car Carriers,
 
 789 F.2d at 593;
 
 Alexander,
 
 773 F.2d at 854.
 

 ECI relies heavily on
 
 In the Matter of Silver Mill Froten Foods, Inc.,
 
 32 B.R. 783 (Bankr.W.D. Mich. 1983), to establish that its two suits against Phillips do not involve the same cause of action. The bankruptcy court in
 
 Silver Mill,
 
 however, applied the Michigan law of res judicata which employs the narrower definition of cause of action adopted by some Illinois courts: “Under Michigan law, the central test in determining whether two proceedings involve the same cause of action is whether the same evidence would sustain both actions.”
 
 Id.
 
 at 786 (citation omitted).
 

 [8]
 

 . If Phillips has
 
 not
 
 lost its setoff right, it would not be any worse off if we allow ECI to split its claims because Phillips would then transfer $5.8 million to ECI (the $7.3 million preference less the $1.5 million it already transferred) and ECI would owe Phillips the entire amount of the preference, $7.3 million. It is unclear whether Phillips in fact has lost its setoff right by paying the $1.5 million to ECI. Although ECI appears to concede that Phillips, by virtue of paying over the $1.5 million, has not lost whatever setoff right it initially had, Appellant’s Reply Brief at 19, the case law is split on this issue.
 
 Compare In re Wilson,
 
 49 Bankr. 19 (Bankr.N.D. Tex.1985) (United States waived right by failing to assert setoff prior to paying out tax refund) and
 
 In re Royal Crown Bottling Co., Inc.,
 
 29 Bankr. 52 (Bankr.N.D.Tex.1983) (bank, which turned over property to trustee, had lost any opportunity that it might have had to effect a setoff but proceeds turned over were cash collateral that debtor could not use without consent of bank or a court order).
 

 [9]
 

 . Phillips also contends that ECI cannot avoid the res judicata effect of the first action by claiming that the bankruptcy court failed to give proper notice to creditors or failed to make findings as to the propriety of ECI’s settlement of the preference claims. Phillips argues that ECI could only challenge the validity of the prior action through a direct appeal. As we understand ECI's argument on this point, ECI is not attacking the validity of the bankruptcy court’s dismissal of the account balance suit. Instead ECI raises the lack of notice to creditors and the absence of a hearing on the preference claims as a basis for inferring that the bankruptcy court did not intend to preclude ECI from subsequently raising its preference claims by dismissing the earlier suit with prejudice. ECI does not argue that the court’s order dismissing the account balance suit should be amended because of the absence of notice and a hearing if, as we have found here, the order operates so as to bar ECI from bringing this preference claim. Thus, we need not determine whether ECI can collaterally attack the order dismissing the account balance suit.
 

 [10]
 

 . Even if Phillips had realized during negotiations to settle the account collection suit that the Compromise Authorization Order reserved ECI’s right to bring this suit, Phillips would not be estopped from raising the order dismissing the first suit with prejudice as a defense in this case. The burden was not on Phillips to clarify the status of its setoff rights under the order dismissing the first suit. The burden was on ECI, the party seeking to bring the second claim, to ensure that that order was not inconsistent with the reservation of rights contained in the Compromise Authorization Order.