Elena EZPELETA, M.D.,
Plaintiff-Appellant,

v.

SISTERS OF MERCY HEALTH CORPORATION, a Michigan corporation, Defendant-Appellee.

No. 85–2419.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 12, 1986.

Decided Aug. 27, 1986.

---

Robert G. Berger, Highland, Ind., for plaintiff-appellant.

David A. Ettineger, Detroit, Mich., for defendant-appellee.

Before CUMMINGS, Chief Judge, WOOD and FLAUM, Circuit Judges.

PER CURIAM.

Appellant Dr. Elena Ezpeleta filed this lawsuit to challenge the termination of her staff privileges at Our Lady of Mercy Hospital, a small private medical facility located in Dyer, Indiana. Dr. Ezpeleta's complaint sets forth three separate legal theories on which it is contended that relief should be granted. First, Dr. Ezpeleta alleges that the defendant violated Section 1 and Section 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. Second, plaintiff alleges that the defendant violated 42 U.S.C. § 1983 by denying her rights under the First and Fourteenth Amendments. Finally, Dr. Ezpeleta alleges that her staff privileges were terminated in violation of her rights under Indiana law. The district court denied relief and granted summary judgment to the defendant. *See Ezpeleta v. Sisters of Mercy Health Corp.*, 621 F.Supp. 1262 (N.D.Ind.1985). We affirm.

## I.

Elena Ezpeleta is a medical doctor whose specialty is anesthesiology. Defendant Sisters of Mercy Health Corporation owns Our Lady of Mercy Hospital. Mercy Hospital, like many hospitals in Indiana, does not employ salaried physicians to perform medical services. Rather, the medical staff is made up of independent contractors and their employees. In the case of the anesthesiology department, a professional medical corporation, Suburban Anesthesia Associates, had an exclusive contract to provide anesthesiology services to Mercy Hospital. While an independent contractor may employ physicians, the right of an individual physician to practice in the hospital is contingent upon the decision of the hospital to grant that individual "staff privileges." Without staff privileges no physician, regardless of his employment with a contract provider, can practice in the hospital. Standards for determining whether a doctor may enjoy staff privileges are determined by the hospital.

Dr. Ezpeleta was a salaried employee of Suburban Anesthesia Associates in August of 1981 when she was granted probationary staff privileges at Mercy Hospital. At that time, Dr. Richard Markey, who headed Suburban Anesthesia Associates, also was chairman of the anesthesiology department at Mercy Hospital. Dr. Markey, who suffered from a heart condition, announced his retirement in 1981. Following this announcement, Mercy Hospital sought another exclusive provider for anesthesiology services to replace Dr. Markey's Suburban Anesthesia Associates.

Ultimately, the hospital entered into a contract with Dr. Shiree Ahmad, who had served as an instructor at Northwestern University Hospital in Chicago. Dr. Ahmad is board-certified and has clinical anesthesiology experience. The contract provided that as an independent contractor Dr. Ahmad would have the exclusive right to provide anesthesiology services at Mercy Hospital either personally or through physicians employed by her. An exception to the exclusivity provision provided that Dr. Ezpeleta and another physician with staff privileges at Mercy (both employees of Suburban Anesthesia Associates) could continue to practice anesthesiology at Mercy Hospital.

Like Dr. Markey, Dr. Ahmad also became head of the anesthesiology department with the authority and responsibility for establishing appropriate policies and procedures. These responsibilities included reviewing and evaluating medical abilities of physicians practicing anesthesiology at Mercy Hospital. From February through April of 1982, Dr. Ahmad formally evaluated Dr. Ezpeleta's work and found it unsatisfactory. Dr. Ezpeleta enjoyed only probationary staff privileges at that time. In May of 1982, Dr. Ahmad informed Dr. Ezpeleta of the unsatisfactory evaluation. Dr. Ahmad, however, allowed Dr. Ezpeleta to retain her probationary staff privileges for an additional three months. During this additional three-month period, Dr. Ahmad's opinion of Dr. Ezpeleta's medical ability and performance did not change.

In August of 1982, Dr. Ahmad recommended to Dr. Cespedes, the chairman of the surgery department, that Dr. Ezpeleta should be denied staff privileges. Dr. Cespedes agreed with Dr. Ahmad and this recommendation was forwarded to Mercy Hospital's credentials committee. The credentials committee recommended termination because of medical inability and at least in part because it was discovered that Dr. Ezpeleta had falsified her original application for staff privileges at Mercy by omitting any mention of her stay at Gary Methodist Hospital at which she was refused permanent staff privileges. The credentials committee's recommendation was followed by the executive committee. A special hearing committee also interviewed Dr. Ezpeleta. That committee concurred in the recommendation. The recommendation also went before the hospital's Divisional Board which adopted the recommendation despite the submission of Dr. Ezpeleta's own written comments responding to the criticisms of Dr. Ahmad. At each of the stages of the review process, each doctor concurred in the recommendation to terminate Dr. Ezpeleta's probationary staff privileges. The review process was in full compliance with the hospital's by-laws applicable to physicians who have probationary staff privileges.

The result of the review process was the suspension of Dr. Ezpeleta's probationary staff privileges in October 1982 and the termination of those privileges in January 1983. In all, plaintiff held probationary staff privileges at Mercy for approximately fourteen months; eight months under Dr. Markey as department head and six months under Dr. Ahmad.

## II

■ Dr. Ezpeleta claims that the defendants violated the antitrust laws by acting to restrain trade and to exclude a competing provider of medical services from the market. In *Marrese v. Interqual, Inc.,* 748 F.2d 373 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985), this Court held that actions taken within the Indiana medical peer review process that result in the suspension of staff privileges are exempt from federal antitrust law under the state action doctrine. *See Doe v. St. Joseph's Hospital of Fort Wayne,* 788 F.2d 411, 416 (7th Cir.1986) (discussing and reaffirming *Marrese* ). Even if we were inclined to reconsider the ruling in *Marrese,* it would be difficult for Dr. Ezpeleta to show that her claim is viable after the Supreme Court's decision in *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), which dealt with an exclusive anesthesiology contract and a doctor who was not part of the group servicing the hospital pursuant to the exclusive contract. The majority in *Hyde* explained that *per se* illegal tying is present only when the defendant has such market power in the tying product (surgical procedures) that it can force buyers to take the tied product (anesthesiology). 466 U.S. at 14, 104 S.Ct. at 1559. In *Hyde,* the Court assumed that the defendant had a market share of 30% of surgical procedures, which it exploited to force patients to take anesthesia from an unwanted provider. Even so, the Court concluded that this was not sufficient market power to show an illegal tying arrangement. *Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 672 (7th Cir.1985) (dis-

cussing *Hyde* ), *cert. denied,* —— U.S. ——, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986). The record in this case indicates that Mercy Hospital does not possess market share anywhere near the 30% found insufficient in *Hyde.* 621 F.Supp. at 1269. Dr. Ezpeleta argues that summary judgment was incorrect because her expert had asserted that "the termination of Dr. Ezpeleta did have an adverse impact on the nature of competition in relevant markets." The relevant inquiry, however, is not what Dr. Ezpeleta's expert thought but rather what the market share of Mercy hospital was at the relevant time. There is no evidence to contradict the conclusion of Mercy's expert that the market share was substantially less than 30%. Therefore, summary judgment was appropriate.

■ We also note that any future antitrust challenges to decisions regarding staff privileges under the Indiana medical peer review process may be deemed frivolous because of the clear bar of the state action doctrine as applied by this court in *Marrese, Doe,* and the present case. In this very expensive area of litigation, we must require that attorneys think before they file. *Cf. Stewart v. RCA Corp.,* 790 F.2d 624, 631 (7th Cir.1986) (Rule 11 *requires* lawyers to think first and file later, on pain of personal liability).

■ Dr. Ezpeleta also argues that she is entitled to recover under 42 U.S.C. § 1983. Of course, an action under section 1983 is only available if state action is present. *See, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *see also Hinman v. Lincoln Towing Service,* 771 F.2d 189 (7th Cir.1985). Appellant contends that since her antitrust claim is barred by the state action immunity doctrine, it is clear that the necessary state action is present in this case. The appellant is wrong. Similar sounding phrases often have different meanings when applied in different legal contexts. This is such a case. In *Marrese,* we noted that the elements required for a

cause of action under section 1983 differ from the elements required for state action under the antitrust laws. *Marrese,* 748 F.2d at 395 n. 25. The test for determining whether state action is present for purposes of section 1983 has been delineated by the Supreme Court in a number of cases. *See, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Although subject to various formulations, the "ultimate issue in determining whether a person is subject to suit under section 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?' " *Rendell-Baker,* 457 U.S. at 838, 102 S.Ct. at 2769; *see also Gramenos v. Jewel Companies,* 797 F.2d 432, 435 (7th Cir.1986). The state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state. *Hinman v. Lincoln Towing Service, Inc.,* 771 F.2d 189, 192 (7th Cir.1985) (citing *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785). The decision at issue here, the decision to terminate staff privileges at a private hospital, cannot be fairly attributed to the state. Only private actors are responsible for the decision to terminate Dr. Ezpeleta. It is true that the decision was made within the context of the statutorily mandated Indiana peer medical review process. This fact, however, is not enough to create section 1983 liability for decisions that "ultimately turn on medical judgments made by private parties according to professional standards that are not established by the state." *Blum,* 457 U.S. at 1008, 102 S.Ct. at 2787. Other circuits have considered similar situations involving medical judgments by private actors and have concluded that state action is not present for purposes of sec-

tion 1983. *See Crowder v. Conlan,* 740 F.2d 447 (6th Cir.1984); *Mendez v. Belton,* 739 F.2d 15 (1st Cir.1984); *Hicks v. Southern Md. Health Systems Agency,* 737 F.2d 399 (4th Cir.1984). Those decisions provide support for our result. This case is clearly distinguishable from *Malak v. Associated Physicians, Inc.,* 784 F.2d 277 (7th Cir. 1986). In *Malak* we found that a decision to terminate the staff privileges of a physician under the Indiana peer review process was actionable under section 1983. *Malak,* however, involved a decision by a public hospital to terminate the plaintiff's staff privileges. There is no allegation here that Mercy is anything but a private hospital and therefore *Malak* is inapplicable.

■ We next consider whether the district court correctly dismissed Dr. Ezpeleta's state law claims. The district court found that judicial review of hospital staffing decisions was limited under Indiana law to a determination of whether the hospital adhered to the procedures contained in its own bylaws. *See* 621 F.Supp. at 1273 (citing *Yarnell v. Sisters of St. Francis Health Services,* 446 N.E.2d 359, 361 (3rd Dist.Ind.1983)). Plaintiff contends on appeal that the district court's inquiry was too limited. Dr. Ezpeleta argues that a reviewing court in Indiana also must determine whether the hospital acted arbitrarily and capriciously in denying staff privileges. There is some support for Dr. Ezpeleta's contention. In *Kennedy v. St. Joseph Memorial Hospital,* 482 N.E.2d 268 (1st Dist. Ind.App.1985), the court stated that judicial intervention in the decision of a hospital regarding staff privileges is "limited to an assessment of whether the proceedings employed by the hospital are fair, the standards set by the hospital are reasonable, and whether they have been applied arbitrarily and capriciously." *Id.* at 271 (citing similar language in *Kiracofe v. Reid Memorial Hospital,* 461 N.E.2d 1134, 1140–41 (1st Dist.Ind.App.1984)). Even if this broader standard of review is the law in Indiana, it cannot help Dr. Ezpeleta. The hospital's actions were not arbitrary. It is undisputed that the bylaws of the hospital were followed and that Dr. Ezpeleta's situa-

ation received several levels of review. Dr. Ezpeleta was given a second chance by Dr. Ahmad. She was allowed to submit a written statement to dispute Dr. Ahmad's conclusions and also was allowed to present her side at an interview. The doctors in the reviewing process utilized their medical judgment in determining that Dr. Ezpeleta should no longer receive staff privileges. This judgment is not subject to second-guessing under Indiana law. Dr. Ezpeleta argues that it was unfair to have doctors whose specialty is not anesthesiology review her qualifications. As the district court pointed out, this argument is meritless because it is not unreasonable to allow physicians from allied fields such as surgery to assist in making an evaluation of whether an anesthesiologist is qualified. 621 F.Supp. at 1275. All the doctors in the reviewing process, a total of 12 physicians, concurred in the recommendation to terminate Dr. Ezpeleta. It is not a decision that can be fairly characterized as arbitrary or capricious. Dr. Ezpeleta's state law claims, like her antitrust and section 1983 claims, are meritless. Therefore, we affirm the judgment of the district court.

AFFIRMED.