**Jane TOMCZYK, Plaintiff,**

v.

**BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, Defendant.**

**No. 88–C–690.**

United States District Court, E.D. Wisconsin.

May 8, 1989.

Marjan R. Kmiec, Kmiec Law Offices, Milwaukee, Wis., for plaintiff.

Laurel Barnes, Asst. Gen. Counsel, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

The plaintiff, Jane Tomczyk, brought suit against Blue Cross & Blue Shield United of Wisconsin and First Financial Savings Association for (1) arbitrary and capricious denial of benefits presumably under the Employee Retirement Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 *et seq.;* (2) bad faith; (3) breach of contract; (4) tortious interference with contract; and (5) violation of constitutional rights under section 1983. The plaintiff seeks punitive damages and other extra-contractual damages.

The plaintiff stipulated to the dismissal of defendant First Financial Savings Association. Defendant Blue Cross & Blue Shield United of Wisconsin now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that there is no controversy with respect to any fact necessary to determine the correctness of defendant's decision denying plaintiff's claim for benefits.

Alternatively, defendant moves the Court for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing plaintiff's claims for bad faith, breach of contract, tortious interference with contract, punitive and other extra-contractual damages on the grounds that these state law causes of action are preempted by the provisions of ERISA; for an order dismissing plaintiff's section 1983 claim on the ground that no state action is alleged; and for an order dismissing plaintiff's demand for trial by jury.

The Court dismisses the plaintiff's state law claims for bad faith, breach of contract, tortious interference with contract, and punitive and other extra-contractual damages. The Court also dismisses the plaintiff's section 1983 claim. The Court holds in abeyance the motion for summary judgment. In light of *Firestone Tire & Rubber Co. v. Bruch,* — U.S. —, 109 S.Ct. 43, 102 L.Ed.2d 22 (1989) (a denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan), the Court requests the parties to supplement their briefs with a discussion of this recent Supreme Court case. The Court further holds in abeyance the defendant's motion for a jury trial.

### I.

Blue Cross issued a policy of group health insurance to the Wisconsin League of Financial Institutions, Ltd. (Savings League). At all times relevant to this action, Jane Tomczyk was employed by First Financial Savings Association. Through its membership in the Savings League, First Financial Savings Association was able to procure insurance for its employees under the Savings League's program with Blue Cross. Jane Tomczyk was a subscriber under this program of insurance.

### II.

In ERISA, Congress set out to:

"protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect there-

to, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." § 2, as set forth in 29 U.S.C. § 1001(b).

ERISA comprehensively regulates, among other things, employee welfare benefit plans that, "through the purchase of insurance or otherwise" provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death. § 3(1), 29 U.S. C. § 1002(1).

Congress capped off the massive undertaking of ERISA with three provisions relating to the pre-emptive effect of the federal legislation:

"Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." § 514(a), as set forth in 29 U.S.C. § 1144(b)(2)(A) (saving clause).

"Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) (deemer clause).

To summarize the pure mechanics of the provisions quoted above: If a state law "relate[s] to ... employee benefit plan[s]," it is pre-empted. § 514a. The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." § 514(b)(2)(A). The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

"[T]he question whether a certain state action is preempted by federal law is one of congressional intent. ' "The purpose of Congress is the ultimate touchstone." ' " *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208 [105 S.Ct. 1904, 1909, 85 L.Ed.2d 206] (1985), *quoting Malone v. White Motor Corp.,* 435 U.S. 497, 504 [98 S.Ct. 1185, 1190, 55 L.Ed.2d 443] (1978), *quoting Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103 [84 S.Ct. 219, 222, 11 L.Ed.2d 179] (1963). We have observed in the past that the express pre-emption provisions of ERISA are deliberately expansive, and designed to "establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523 [101 S.Ct. 1895, 1906, 68 L.Ed.2d 402] (1981). As we explained in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98 [103 S.Ct. 2890, 2900, 77 L.Ed.2d 490] (1983);

"The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected those provisions in favor of the present language, and indicated that section's pre-emptive scope was as broad as its language. See H.R.Conf.Rep. No. 93–1280, p. 383 (1974); S.Conf.Rep. No. 93–1090, p. 383 (1974)."

The House and Senate sponsors emphasized both the breadth and importance of the pre-emption provisions. Representative Dent described the "reservation to Federal authority the sole power to regulate the field of employee benefit plans" as ERISA's "crowning achievement." 120 Cong.Rec. 29197 (1974). Senator Williams said:

"It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intend-

ed to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force and effect of law." *Id.,* at 29933.

See also *Shaw v. Delta Air Lines, Inc., supra,* [463 U.S. 85] at 99–100, n. 20 [103 S.Ct. 2890, 2901, n. 20, 77 L.Ed.2d 490 (1983) ] (describing remarks of Sen. Javits).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1986).

■ The state law causes of action in the plaintiff's complaint relate to an employee benefit plan and therefore fall under ERISA's express preemption clause, section 514(a). A law relates to a benefit plan if it has a connection with or reference to such a plan. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 47, 107 S.Ct. at 1553. The pre-emption clause is not limited to "state laws specifically designed to affect employee benefit plans." *Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553, *citing Shaw v. Delta Air Lines,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

Unless these causes of action fall under an exception to section 514(a), therefore, they are expressly pre-empted.

In *Metropolitan Life [v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985) ], we were guided by several considerations in determining whether a state law falls under the saving clause. First, we took what guidance was available from a "common sense view" of the language of the saving clause itself. 471 U.S., at 740 [105 S.Ct. at 2389]. Second, we made use of the case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.,* in interpreting the saving clause. Three criteria have been used to determine whether a practice falls under the "business of insurance" for purposes of the McCarran–Ferguson Act:

"[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy

relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129 [102 S.Ct. 3002, 3008–09, 73 L.Ed.2d 647] (1982) (emphasis in original).

*Pilot Life Insurance Co. v. Dedreaux,* 481 U.S. at 48–49, 107 S.Ct. at 1553.

The Supreme Court determined that the Mississippi law of bad faith does not "regulate insurance" under a common sense view. *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554. "Mississippi's law of bad faith, even if associated with the insurance industry, has developed from general principles of tort and contract law available in any Mississippi breach of contract case." *Pilot Life,* 481 U.S. at 51, 107 S.Ct. at 1555. The Wisconsin law of bad faith is also firmly rooted in general principles of tort and contract law. As the Wisconsin Supreme Court has noted in discussing bad faith, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Anderson v. Continental Insurance,* 85 Wis.2d 675, 689, 271 N.W.2d 368, 375 (1978). *See also Rust v. Blue Cross & Blue Shield,* No. 87–C–0751 (E.D.Wis. Sept. 21, 1988) (J. Warren, presiding).

The Supreme Court also held that the Mississippi law of bad faith does not regulate insurance within the meaning of the McCarran–Ferguson Act. *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554. Likewise, the Wisconsin law of bad faith does not regulate insurance within the meaning of the Act. It does not effect a spreading of policyholder risk; it does not define the terms of the relationship between the insurer and the insured, it only declares that a breach of contract may in certain circumstances allow the policyholder to obtain punitive damages; and, finally, it is not limited to entities in the insurance industry.

The Supreme Court finally held that it was the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive. *Pilot Life,* 481 U.S. at 57, 107 S.Ct. at 1558.

Based on the *Pilot Life* analysis, the Court concludes that the tort of bad faith in Wisconsin is pre-empted and not saved by ERISA. The plaintiff's other state law causes of action, breach of contract and tortious interference with contract also are pre-empted by ERISA. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (common law contract and tort claims are pre-empted by ERISA under *Pilot Life* and are not saved). The Court therefore DISMISSES the plaintiff's bad faith, breach of contract, and tortious interference with contract claims.

### III.

■ Because ERISA pre-empts state law causes of action, the plaintiff's only viable cause of action is under ERISA, which provides for the following recovery:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [§ 29 U.S.C. § 1109];

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132.

The Supreme Court has stated that "there is a stark absence—in the statute itself and in its legislative history—of any reference to an intention to authorize the recovery of extracontractual damages." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1984). The Court therefore held that plaintiff did not have a cause of action for extracontractual damages caused by improper or untimely processing of benefit claims under 29 U.S.C. § 1132(a)(2). In addition, the Court of Appeals for the Seventh Circuit has held that plaintiff did not have a cause of action for punitive damages under 29 U.S.C. § 1132(a)(3). *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 626–627 (7th Cir.1987). Based on these cases, the Court DISMISSES the plaintiff's claims for extracontractual damages.

### IV.

■ An action under section 1983 is available only if "state action" is present. *Ezpeleta v. Sisters of Mercy Health Corp.*, 800 F.2d 119, 122 (7th Cir.1986). The plaintiff purports to satisfy the state action requirement by asserting that "Blue Cross is licensed and extensively regulated by the Insurance Commissioner pursuant to state law, under the Wisconsin Administrative Code, Ins. 1.01–20.01, Wis.Adm.Code." "It is settled, however, that the mere existence of detailed regulation of a private entity does not make every act, or even every regulated act, of the private firm, the action of the State." *Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 826 (7th Cir.1975). "Unless it is alleged that the regulatory agency has encouraged the practice in question, or at least given its affirmative approval to the practice, the fact that a business or institution is subject to regulation is not of decisive importance." *Id.* The defendant's decision to deny benefits is "a purely private one", notwithstanding that it is licensed and regulated by the state. *Koller v. Aetna Life Insurance Co.*, Case No. 87–C–903, slip op. at 2, —— F.Supp. ——, —— (E.D.Wis., Mar. 1, 1988) (J. Stadtmueller, presiding). Because the plaintiff has failed to allege facts which would support her allegation that Blue Cross acted under color of state law in denying her claims, the Court DISMISSES the plaintiff's section 1983 claim.

### V.

The Court has approved the parties' stipulation for an extension of discovery to a

date following the Court's resolution of the pending summary judgment motion. The Court therefore has taken the pretrial conference scheduled for May 9, 1989 off the Court's calendar. The conference will be rescheduled, if appropriate, in the order resolving the motion for summary judgment.

SO ORDERED.