**Jit Kim LIM, Plaintiff–Appellant,**

v.

**CENTRAL DuPAGE HOSPITAL, a corporation, George Holzhauer, Peter Brusca, et al., Defendants–Appellees.**

No. 91–2981.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1992.

Decided Aug. 11, 1992.

Rehearing Denied Oct. 26, 1992.

Michael L. Bolos (argued), Joliet, Ill., for plaintiff-appellant.

Hugh C. Griffin, Diane I. Jennings (argued), Lord, Bissell & Brook, Scott O. Reed, John J. Walsh, III, Robert M. Chemers, Robert J. Franco, Pretzel & Stouffer, Chicago, Ill., for defendants-appellees.

Before COFFEY, FLAUM, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

For the third time, Dr. Jit Kim Lim is appealing from a denial of his claims for relief that arise from the same core of operative facts. In *Lim v. Central DuPage Hospital*, 871 F.2d 644 (7th Cir.1989), we affirmed the district court's ruling that Dr. Lim's claim that the hospital unlawfully revoked his staff privileges on account of race failed to state a claim upon which relief could be granted, holding that Dr. Lim did not possess a property interest in retaining staff privileges. The plaintiff thereafter filed a Federal Rule of Civil Procedure 60(b)(6) motion requesting that the district judge vacate the original judgment, alleging that a change in law after the dismissal of his race discrimination claim constituted an extraordinary circumstance requiring that he be permitted to bring an antitrust claim against the defendants.[1] The district court denied the Rule 60(b) motion, holding that Dr. Lim failed to pursue the procedures available to him while his case was on appeal before us, i.e., to request an opportunity to amend his complaint to include the antitrust claims. Dr. Lim appealed the denial of his Rule 60(b) motion, and failed to file an appellate brief or a response to our order to show cause why the appeal should not be dismissed for want of prosecution. We dismissed the appeal on August 31, 1990. Rather than pursue his appeal of the denial of his Rule 60(b) motion, Dr. Lim elected to attempt to litigate additional causes of action against essentially the same defen-

---

1. As we explain below, Dr. Lim's initial complaint alleged an antitrust violation, but he voluntarily dismissed it to avoid Rule 11 sanctions.

dants on the basis of the identical core of operative facts asserted in his initial action. The plaintiff appeals the district court's holding that *res judicata* bars his second action. We affirm.

## I. FACTS

Dr. Lim enjoyed staff privileges at Central DuPage Hospital in Winfield, Illinois as a neurosurgeon from 1976 until the suspension of his staff privileges on March 24, 1986. The plaintiff asserts that his suspension was the result of his association with Dr. Leonard J. Chinnici, a chiropractor, with whom he began to practice in December 1984. Dr. Lim and Dr. Chinnici agreed to refer patients to each other, to consult with each other when appropriate and to share office space at their respective offices for their practice in their joint venture, the Neuro–Spinal Center. The plaintiff's office was located in a condominium in Mona Kea Professional Park where a number of other medical doctors had their offices. The other condominium owners in the building objected to having a chiropractor practicing there and allegedly submitted the following letter to Dr. Lim on June 7, 1985:

"We wish to convey to you our extreme displeasure with the alliance between you and Dr. Chinnici and our hope that you will take the steps to terminate this arrangement as quickly as is feasible ... your partnership with Dr. Chinnici reflects poorly on Mona Kea Medical Park and the physicians who practice here. It is our intent to take whatever steps are necessary to discourage other chiropractors from practicing at Mona Kea.

"You should also know that the Central DuPage Hospital Medical Staff and the DuPage County Medical Society have been notified of your present association with doctors of chiropractic."

The appellant maintains that during the summer of 1985 a number of the defendants warned him to terminate his association with Dr. Chinnici and that as a result of the defendants boycotting him, the number and quality of patient referrals to him decreased dramatically.

In November or December of 1985, the Medical Staff at Central DuPage Hospital informed Dr. Lim that it was going to conduct a peer review of his medical competence because of an alleged "concern[ ] with what appeared to be disproportionate post-operative complications among Lim's patients...." *Lim,* 871 F.2d at 647. Upon completing the peer review process, Central DuPage Hospital suspended Dr. Lim's staff privileges on March 24, 1986, and the hospital's board of governors confirmed the suspension and made it permanent on August 25, 1986. Lim asserts that he satisfactorily addressed all of the investigators' concerns, but in spite of this they suspended him as punishment for his association with a chiropractor [2] and to discourage future attempts of neurosurgeons to attempt to gain a competitive advantage through an association with a chiropractor.

On August 25, 1986, the plaintiff filed an antitrust claim in the district court alleging that the initiation of the peer review process was part of a conspiracy "to ostracize and destroy plaintiff's medical practice." Two days later in *Ezpeleta v. Sisters of Mercy Health Corp.,* 800 F.2d 119, 122 (7th Cir.1986), we stated that "any future antitrust challenges to decisions regarding staff privileges under the Indiana medical peer review process may be deemed frivolous because of the clear bar of the state action doctrine...." When the defendants moved for dismissal of the complaint on the basis of *Ezpeleta* in February of 1987, Dr. Lim withdrew his antitrust claim and replaced it with a claim that the defendants suspended him as a result of his race, thereby violating his civil rights through illegally depriving him of a property interest in retaining his staff privileges at Central DuPage Hospital. Finding that hospital staff privileges were not "property" within the meaning of the civil rights statutes, the district court dismissed the complaint on January 15, 1988, and the

---

**2.** The plaintiff claims that he terminated his association with Dr. Chinnici on January 10, 1986, as a result of the pressures the defendants focused on him.

plaintiff filed a timely appeal. On May 16, 1988, less than two weeks after the plaintiff filed his belated appellate brief,[3] the Supreme Court held that a hospital peer review process comprises insufficient state action to be immune from antitrust claims unless the state actively supervises and reviews the procedure. *See Patrick v. Burget,* 486 U.S. 94, 100–01, 108 S.Ct. 1658, 1662–63, 100 L.Ed.2d 83 (1988). *Patrick* effectively overruled our *Ezpeleta* decision, thus removing any potential bar to Dr. Lim prosecuting an antitrust claim.

On September 15, 1988, four days prior to oral argument of his appeal, the plaintiff filed a motion in this court entitled "Motion for Leave to Cite Recent Authority and for Additional Procedural Relief." In his motion the plaintiff asserted that he withdrew his antitrust claim as a result of this court's *Ezpeleta* decision, and informed the court that *Patrick* effectively overruled *Ezpeleta.* The appellant requested "leave to reinstate the anti-trust counts of this litigation and for remand thereof to the district court." In response, the defendants argued that it was too late for Dr. Lim to raise his antitrust claim on appeal because he had voluntarily abandoned it in the district court and allowed judgment to be entered against him without raising the claim there. At oral argument the appellant failed to reiterate his request for remand to reinstate his antitrust claim, and while we did not specifically address the issue in our opinion, we noted that "[a]bandonment of claims is a *leitmotif* of this appeal." *Lim,* 871 F.2d at 646. The plaintiff again failed to allude to his request for remand to reinstate his antitrust claim in his petition for rehearing. We denied Lim's request for rehearing on May 30, 1989.

The plaintiff filed a Rule 60(b)(6) motion in the district court on October 13, 1989, arguing that the change in antitrust law under *Patrick* constituted an extraordinary circumstance requiring that the court vacate the January 22, 1988 judgment against him. On February 22, 1990, the district judge denied the Rule 60(b)(6) motion on two grounds: a) "the law is clear that a mere change in law, no matter how dramatic, is insufficient on its own to warrant vacating a final judgment [i.e., to constitute 'extraordinary circumstance']"; and b) the plaintiff failed to pursue all possible opportunities to request a remand to amend his complaint to include the antitrust claims while his appeal was pending. Dr. Lim appealed and was instructed to submit his appellate brief on or before May 7, 1990. On June 1, 1990, we issued the following order to the appellant's attorney:

"The Clerk has brought to the attention of this Court the fact that you have failed to file appellant's brief within the required time. No motion for an extension of time within which to file appellant's brief has been made pursuant to Circuit Rule 26. On consideration whereof,

"IT IS ORDERED that you, as counsel for appellant, respond within fourteen (14) days of the date of this order as to why this appeal should not be dismissed for lack of prosecution pursuant to Circuit Rule 31(c)(2)."

No response was forthcoming, and on August 31, 1990, we issued a second order:

"Appellant failed to respond to the court's Rule to Show Cause issued on June 1, 1990. In that Rule to Show Cause, appellant was advised that his failure to respond to the court's order would result in the dismissal of his appeal. Accordingly,

"IT IS NOW ORDERED that this appeal is DISMISSED for WANT OF PROSECUTION. *See* Circuit Rule 31(c)(2)."

While the plaintiff was defaulting on his appeal of the denial of his Rule 60(b) motion, he was busily pursuing a second law-

---

**3.** On April 25, 1988, this court issued an order to the plaintiff to show cause why his appeal should not be dismissed for failure to file a brief. The appellant filed his brief on May 3, 1988, and responded to a show cause order on May 6, 1988. We note that the plaintiff likewise required an extension of time to file his reply brief. While the plaintiff is unwilling to accept the district court's judgment that his case is closed, we note that he was far from diligent in prosecuting it.

suit against the same defendants based on the same core of operative facts. In addition to the defendants in the first action ("Central DuPage defendants"), the plaintiff named the doctors who had offices at Mona Kea Medical Park and several professional associations as defendants ("Mona Kea defendants"), alleging that they coerced him into discontinuing his association with Dr. Chinnici. In his complaint in his second suit, Dr. Lim stated his antitrust claim and a RICO count.[4] The court issued an order on November 9, 1989, staying the second case pending resolution of the plaintiff's Rule 60(b) motion, but the action resumed after the court denied the Rule 60(b) motion on February 22, 1990. On March 29, 1990, the Central DuPage defendants filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted on the basis of *res judicata* and alternatively that the complaint failed to allege the essential elements of a RICO claim. The Mona Kea defendants likewise filed a Rule 12(b)(6) motion to dismiss on April 10, 1990. In the plaintiff's response to the Central DuPage defendants' motion to dismiss, he argued that *res judicata* did not bar his antitrust claim because he had not received a full and fair opportunity to litigate the issue, but he acknowledged that *res judicata* barred his claim against the Central DuPage defendants on his RICO count. The district judge granted the plaintiff's motion to file an amended complaint on August 20, 1990, and ordered that the defendants' motions to dismiss were moot. Thereafter the Central DuPage defendants renewed their motion to dismiss based on *res judicata*, and the Mona Kea defendants filed an answer to the amended complaint. Dr. Lim failed to respond to the Central DuPage defendants' renewed motion to dismiss, and on December 5, 1990, the trial judge found that *res judicata* barred the claims against the Central DuPage defendants and granted their motion to dismiss. The Central DuPage defendants moved for entry of a Rule 54(b) final judgment on February 1, 1991, and the district judge ordered that the plaintiff had seven days to respond. Dr. Lim failed to

object to the entry of a Rule 54(b) judgment, and the court entered judgment on March 8, 1991. On March 18, 1991, the plaintiff filed his first response to the Central DuPage defendants' September 10, 1990 motion to dismiss in a motion for rehearing and to alter or amend the judgment to reinstate his causes of action. Meanwhile, the Mona Kea defendants withdrew their answer to the amended complaint and filed a motion to dismiss on the ground of *res judicata* and the failure to adequately allege a RICO claim. On July 23, 1991, the district court denied the plaintiff's motion to alter or amend the judgment dismissing the Central DuPage defendants and granted the Mona Kea defendants' motion to dismiss. The court held that *res judicata* barred the antitrust claims against the Central DuPage defendants because the plaintiff had a full and fair procedural opportunity to litigate them; that the Mona Kea defendants were in privity with the Central DuPage defendants, and thus *res judicata* barred the claims against them; and alternatively, the court held that the plaintiff failed to allege a pattern of racketeering activity.

## II. ISSUES

The only issue we consider on this appeal is whether *res judicata* bars the plaintiff from asserting his antitrust claim. The appellant agrees that *res judicata* bars him from pursuing a RICO claim against the Central DuPage defendants, and since he has failed to argue that the district court erred in holding that the Mona Kea defendants were in privity with the Central DuPage defendants, we need not address the RICO arguments.

## III. *RES JUDICATA*

■ The appellant argues that our *Ezpeleta* decision forced him to withdraw his preferred antitrust theory, and therefore, he was denied a full and fair opportunity to litigate that issue in his first action. "For res judicata to apply, three requirements must be met: (1) an identity of the

---

4. The complaint also included pendant state law claims, which are not before us on this appeal.

parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987). The first requirement is clearly met because Dr. Lim has brought his second lawsuit against the same defendants as those involved in the initial suit, and he has failed to appeal the district court's holding that the additional defendants are in privity with the original ones. In regard to

"the scope of [the] 'cause of action,' this circuit has utilized the 'same transaction' test. Under this test, a 'cause of action' consists of 'a single core of operative facts which give rise to a remedy.' This 'same transaction' test is decidedly fact-oriented. Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost. Thus, 'a mere change in the legal theory does not create a new cause of action.' Therefore, prior litigation acts as a bar not only to those issues which were raised and decided in the earlier litigation but also to those issues which *could* have been raised in that litigation."

*Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986) (emphasis original) (citations omitted). Since both of Dr. Lim's actions are based on the identical core of operative facts and the same injury, there is an identity of the causes of action. In regard to the third requirement for applying *res judicata*, the appellant has never disputed the fact that there was a final judgment on the initial lawsuit.

■ The plaintiff does not take issue with the foregoing description of *res judicata*, but contends that the policy reasons behind *res judicata* do not justify applying it in this case where he was allegedly prevented from bringing his preferred cause of action in the former suit. He quotes *Jones v. City of Alton*, 757 F.2d 878, 885 (7th Cir.1985), for the proposition that *res judicata* "does not bar litigation of issues which could not have been litigated" in the prior action. Dr. Lim's reliance upon *Jones* is misplaced. Initially, we note that *Jones* was decided under the *res judicata* principles of Illinois law. "Because the prior

litigation was brought in federal court, the federal rule of res judicata determines whether the [former] suit bars [Lim] from maintaining this action." *In re Energy Cooperative*, 814 F.2d at 1230. As we recognized in *In re Energy Cooperative*, "the federal rule seems less demanding than that applied by the Illinois cases...." *Id.* "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost." *Id.* (quoting *Car Carriers*, 789 F.2d at 593). Dr. Lim has failed to demonstrate that a change in law after the entry of judgment creates an exception to the application of federal *res judicata* law.

■ The second reason that Dr. Lim's reliance upon *Jones* to exclude the application of *res judicata* is in vain is that he was not prevented from litigating the antitrust claim in the former suit. In view of our warning about Rule 11 sanctions in *Ezpeleta*, it is not surprising that the plaintiff chose to withdraw his antitrust claim (but he could have argued that the Illinois peer review system was sufficiently different from Indiana's that *Ezpeleta* was inapplicable to his case). Nonetheless, the plaintiff failed to take advantage of his full and fair opportunity to litigate the antitrust claims after the Supreme Court released its opinion in *Patrick v. Burget*. The requirement that a party have a full and fair opportunity to litigate an issue before *res judicata* may apply relates to the procedural opportunity rather than to a judicial determination of the merits of the issue. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). Dr. Lim filed a request for remand four days before oral argument on his appeal, but he failed to respond to the defendants' arguments against remand, he failed to raise the issue during oral argument, and he failed to object to our *sub silentio* rejection of his request for remand in our opinion when he requested rehearing of his appeal. After failing to zealously pursue the procedures available to him in the appellate court, the plaintiff possessed still one more opportunity to attempt to reinstate his antitrust

claims through his Rule 60(b)(6) motion. The appellant filed his Rule 60(b)(6) motion requesting that the judgment be vacated, but when the district court denied the motion, he failed to properly prosecute an appeal. Although he filed his appeal, he failed to submit an appellate brief, thus resulting in our dismissal of his appeal for failure to prosecute it. In defaulting on his Rule 60(b)(6) appeal, the plaintiff failed to pursue the "full and fair opportunity" to litigate his available antitrust claim. Just as abandonment of claims was the motif of Dr. Lim's first appeal, *see Lim*, 871 F.2d at 646, failure to follow through with the procedures he initiated is the motif of this third appeal. The plaintiff received a full and fair opportunity to litigate his antitrust claim, but neglected to prosecute the same in a lawyer-like timely and efficient manner.

## IV. CONCLUSION

At some point, there must be an end to litigation, and barring the appellant's second suit on the ground of *res judicata* is an equitable method of upholding that policy. As the district court noted, "[t]he plaintiff has filed two cases, five separate complaints, two appeals [now three], and numerous motions to reconsider and/or vacate. At some point it is unfair to require the defendants to repeatedly renew their defense in a case which they reasonably believed to be closed against them." Dr. Lim's inability to litigate his antitrust claim is the result not of a deprivation of available process, but of his counsel's failure to follow through with the full and fair opportunity that was available to him. The judgment of the district court is

AFFIRMED.