F I L E D
United States Court of Appeals
Tenth Circuit

FEB 12 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRIAN E. CONNER, M.D.,

        Plaintiff - Appellant,

v.

SALINA REGIONAL HEALTH
CENTER, INC.,

        Defendant - Appellee.

No. 00-3348
D.C. No. 99-CV-2451-GTV
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR** and **PORFILIO**, Circuit Judges, **STAGG**, District Judge.[**]

        Brian E. Conner, M.D. ("Conner") applied for reappointment to the medical staff

of Salina Regional Health Center ("SRHC"). The privately-owned hospital referred the

matter to its peer review panel, which recommended denial of the application. SRHC

affirmed the panel and this lawsuit followed. Finding that SRHC's decision to deny

Conner's application could not be fairly attributable to the state of Kansas, the district

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

court granted a Rule 12(b)(6) motion to dismiss. As a result, Conner's federal and supplemental state law claims were dismissed. Conner appeals these dismissals. For the reasons set forth below, we AFFIRM the district court's dismissal of Conner's claims.

## I.  BACKGROUND

SRHC is a privately-owned Kansas corporation. Prior to 1997, Conner served as an opthamologist on SHRC's medical staff. As required by SRHC by-laws, Conner submitted an application for reappointment to SRHC's medical staff. However, on February 3, 1997, SRHC notified Conner that his application for reappointment to the medical staff was denied.

After exhausting all administrative remedies, Conner filed this action alleging violations of his rights to due process and free speech under 42 U.S.C. § 1983.[1] In his complaint, Conner asserted that as health care providers are heavily regulated under Kansas law, they can be liable under section 1983. See Kan. Admin. Reg. § 28-34-6a and Kan. Stat. § 65-4921-4930. Conner further contended that section 65-4929(b)[2] of the

---

[1]In his complaint, Conner also asserted breach of contract and tortious interference as theories for recovery. Below, the district court declined the opportunity to exercise supplemental jurisdiction over these claims after dismissing all federal law claims. As we are affirming the district court's dismissal of all federal claims, it is unnecessary to revisit the state law issues.

[2]Section 65-4929(b) provides:

> Health care providers and review, executive or impaired
> provider committees performing their duties under K.S.A. 65-
> 4922, K.S.A. 65-4923 and K.S.A. 65-4924 and peer review
> pursuant to K.S.A. 65-4915 and amendments thereto for the

Kansas Statutes designates health care providers, such as SRHC, as "state officers" and as such SRHC could be attacked under section 1983. Conner's due process claim rested on his assertion that he was deprived of protected property interests without due process of law. According to Conner, this deprivation was specifically manifested in an October 1995 administrative suspension which prevented him from performing certain medical procedures, and ultimately the denial of his application for reappointment to SRHC's medical staff. Conner's freedom of speech claim was based on his argument that his suspension and application denial were meted out in retaliation for complaints he had made in relation to the quality of patient care at SRHC. In lieu of an answer, SRHC moved to dismiss for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). SRHC asserted that it was a privately-owned hospital corporation and, therefore, could not act under color of state law.

In a Memorandum and Order granting SRHC's motion, the district court found that the language of section 65-4929(b) was written to protect qualified health care providers against antitrust liability and noted that there were different analyses to determine the existence of the state action immunity doctrine for protection from antitrust

---

purposes expressed in subsection (a) and 65-4915 and amendments thereto shall be considered to be state officers engaged in a discretionary function and all immunity of the state shall be extended to such health care providers and committees, including that from the federal and state antitrust laws.

liability as compared with the analysis to establish state action for purposes of section 1983. As a result, the court found that section 65-4929(b) did not "in and of itself establish that such health care providers act under color of law for purposes of section 1983." The court explained that "the issue is whether a private health care provider's actions are fairly attributable to the State" and that under traditional section 1983 analyses, SRHC's "decision in denying reappointment of plaintiff to its medical staff was not an action fairly attributable to the State." On appeal, Conner contends that the district court misinterpreted section 65-4929(b) and erred in determining that under no set of facts could he prove that SRHC's denial of his application constituted state action.

## II. DISCUSSION

We review the granting of a Rule 12(b)(6) motion to dismiss de novo, applying the same standard as the district court. See Ramirez v. Dept. of Corrections, State of Colorado, 222 F.3d 1238, 1240 (10th Cir. 2000). The purpose of a motion to dismiss is to test the sufficiency of the complaint, and the court must "accept all allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924 (10th Cir. 1994). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations,[3] and reads all reasonable inferences in favor of the plaintiff. See Witt v. Roadway Express, 136 F.3d 1424, 1428 (10th Cir. 1998). We will uphold dismissal "only when it appears that the

---

[3]See Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir. 1998).

plaintiff can prove no set of facts in support of the claims that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

In order to state a claim under section 1983, two allegations are required. First, Conner must "allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923 (1980) (internal citation omitted). As Conner has raised due process and free speech claims in his complaint, he has unquestionably alleged deprivation of his federal rights. The primary issue, therefore, is whether these alleged deprivations were accomplished under color of state law.

In determining if SRHC acted under color of state law, the ultimate issue is whether its actions were "fairly attributable" to the state. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982). In Lugar, the Supreme Court adopted a two-part approach to determine the question of fair attribution. First, the deprivation of the right must be caused "by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." Id. Second, the depriving party must "fairly be said to be a state actor." Id. A party can be "fairly said to be a state actor" if he is a state official, if "he has acted together with or has obtained significant aid from state officials," or if "his conduct is otherwise chargeable to the State." Id.

Conner's appeal primarily flows from his interpretation of section 65-4929 of the Kansas Statutes. Section 65-4929 is a part of the Kansas Risk Management Act ("KRMA") which was enacted as a part of comprehensive medical malpractice legislation in 1986. See Anglemyer v. Hamilton County Hospital, 58 F.3d 533, 540 (10th Cir. 1995). In an effort to "protect the public's general health," the KRMA requires "[i]mplementation of risk management plans and reporting systems . . . and peer review." Kan. Stat. § 65-4929(a). Under section 65-4929(b), health care providers required to perform these duties are considered "state officials engaged in a discretionary function and all immunity of the state shall be extended to such health care providers . . . , including that from the federal and state antitrust laws." Conner argues that such language transforms SRHC, a private hospital, into a state actor.

A federal court should apply the rules of statutory interpretation and construction applied by the highest court of that state. Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1191 (10th Cir. 2000); Comm'r v. Estate of Bosch, 387 U.S. 456, 465, 87 S. Ct. 1776, 1782 (1967) ("[The District Court] may be said to be, in effect, sitting as a state court"). The Supreme Court of Kansas has held that "[i]n interpreting a statute, we must give effect to its plain and unambiguous language, without determining what, in our view, the law should be." George v. Capital South Mortgage Invs., Inc., 961 P.2d 32, 43 (Kan. 1998). However, courts are not permitted to consider isolated parts of an act but must construe all parts together because literal interpretation of

one section, alone, could conceivably contravene the purpose of the legislation.  See

Kansas Comm'n. on Civil Rights v. R.G. Howard, 544 P.2d 791, 794 (Kan. 1975).

When read in its entirety, section 65-4929, by itself, cannot be read to subject

health care providers to section 1983 liability.  Although Conner correctly points out that

health care providers that perform the duties set out under the KRMA are considered state

officials, no mention is made of the potential for section 1983 liability.  Rather,

immediately following this language, section 65-4929(b) clearly and unambiguously

provides that "all immunity of the state shall be extended to such health care

providers . . . , including that from the federal and state antitrust laws."

While such language explicitly manifests the Kansas legislature's intention to

shield health care providers from antitrust liability, it is not necessarily instructive of a

desire within the legislature to create new liabilities.  In fact, the Supreme Court has

stated, "[a]lthough by no means identical, analysis of the existence of state action

justifying immunity from antitrust liability is somewhat similar to the state action inquiry

conducted pursuant to § 1983 and the Fourteenth Amendment."  Nat'l Collegiate Athletic

Ass'n v. Tarkanian, 488 U.S. 179, 195 n. 14, 109 S. Ct. 454 n. 14 (1988).  We have also

recognized that there is a distinction between the state action immunity doctrine for

purposes of federal antitrust laws and the requirement that a private party act "under

color" of law for purposes of section 1983 claims.  See Tarabishi v. McAlester Reg'l

Hosp., 951 F.2d 1558, 1565 n. 6 (10th Cir. 1991) (holding that the determination that a

public hospital was liable under section 1983 was not dispositive of the issue of whether the hospital was entitled to antitrust immunity) (comparing Ezpeleta v. Sisters of Mercy Health Corp., 800 F.2d 119, 122 (7thCir. 1986), implicitly overruled on other grounds by Patrick v. Burget, 486 U.S. 94, 99-101, 108 S. Ct. 1658 (1988)).  In order to establish state action immunity, the challenged restraint must be clearly articulated as state policy and the policy must be actively supervised by the state itself.  See Patrick, 486 U.S. at 100, 108 S. Ct. at 1663.  By contrast, the test for state action under section 1983 requires that the infringement of federal rights be fairly attributable to the state.  See Lugar, 457 U.S. at 937, 102 S. Ct. at 2753.  As such, the language of section 65-4929(b) is not indicative of the statute's ability to attach section 1983 liability to health care providers.

To the contrary, section 65-4929(c) provides that "[n]othing in this section shall be construed to require health care providers or review, executive or impaired provider committees to be subject to or comply with any other law relating to or regulating state agencies, officers or employees."  Such language suggests that the legislature did not intend to subject health care providers to the same responsibilities and liabilities of state officials.  Accordingly, measuring section 65-4929(b)'s silence in relation to state action liability against the statute's stated intent to establish state action immunity while establishing no further duties, we find that mere application of the term "state official" to health care providers that undertake risk management and peer review is not determinative of a section 1983 claim.

Conner also argues that the regulatory scheme implemented by the KRMA mandated the risk management and peer review process utilized by SRHC in denying Conner's reapplication. Specifically, Conner contends that through the KRMA, the state influences and in fact delegates the duties of risk management and peer review to health care providers.

The Supreme Court has noted that "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 930 (2001). As a result, we have recognized that we must take a fairly flexible approach in determining if state action exists. See Gallagher v. Neil Young Freedom Concert., 49 F.3d 1442, 1447 (10th Cir. 1995). In fact, the Supreme Court has developed, and we have utilized, a variety of approaches to assist in determining if state action exists. See id. (discussing the close nexus, symbiotic relationship, joint action, and public function tests). While these tests illustrate that fair attribution can be present absent direct government involvement, the hallmark remains fair attribution. Accordingly, every successful section 1983 claim against a nominally private entity must allege state involvement so pervasive that the challenged action can be said to be fairly attributable to the state, whether that involvement is effectuated through state coercion, state influence, state reliance, or delegation of state power. See Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786 (1982).

Such involvement is not present by virtue of the state regulatory scheme in question. While the KRMA sets out fairly extensive regulations in relation to risk management programs and reporting requirements, it does not develop a system for health care providers to implement with respect to their peer review functions. Specifically, Section 65-4922 of the KRMA provides guidelines that medical care facilities must establish risk management programs and submit to the department of health and environment their risk management plan for approval. Section 65-4923 of the KRMA establishes requirements for reporting acts by health care providers that fall below the applicable standard of care or may be grounds for disciplinary action. However, at no point does the KRMA mandate or even suggest peer review procedures for medical care facilities to implement. Rather, section 65-4929(a) merely states "peer review pursuant to K.S.A. 65-4915 and amendments thereto effectuate this policy [for providing and regulating certain aspects of health care delivery in order to protect the public's general health]." Section 65-4915 provides, inter alia, "'[p]eer review' means any of the following functions: . . . (D) evaluate the qualifications, competence and performance of the providers of health care or to act upon matters relating to the discipline of any individual provider of health care . . . ." Although this language illustrates that peer review is important to the underlying policy of the KRMA, nowhere does the Act indicate state involvement in the process used by health care providers.

Kansas Administrative Regulations section 28-34-6a also includes provisions

relating to medical staff admission. Section 28-34-6a provides in pertinent part:

> Each hospital shall maintain an organized medical staff. Admission to the staff and clinical privileges associated with membership shall be granted by the governing authority through a mechanism which evaluates each member's qualifications to engage in that member's area of clinical practice.

In relation to the necessary qualifications for admission to the staff, section 28-34-6a provides various factors including "certification, fellowship, membership on a specialty board or society, or the completion of a general practice residency." However, the section clearly provides that membership decisions cannot be made solely on one of these factors. Such provisions are hardly coercive.

Even if these provisions were not so limited, we have previously recognized that "government funding and regulation of an ostensibly private organization, in the absence of other factors, is insufficient to establish government action." Gilmore v. Salt Lake Cmty. Action Program, 710 F.2d 632, 635 (10th Cir. 1983). In fact, under circumstances similar to the case at bar where a private entity has been pervasively regulated by the state, state action will not be found "absent evidence of state influence, involvement, or control over the personnel decisions which are subject to challenge." McDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1118 (10th Cir. 1991). Therefore, it is clear that these regulations alone do not suffice to support a finding of state action.

Ultimately, we agree with the district court's determination that Conner's action

-11-

should not survive a Rule 12(b)(6) motion for dismissal because the power to revoke staff privileges and make other personnel decisions have not traditionally been held by the state. In this context, we find the Fifth Circuit's holding in Wong v. Stripling, 881 F.2d 200 (5th Cir. 1989), persuasive. In Wong, the plaintiff, a member of the medical staff of the defendant private hospital, had his medical privileges revoked. On appeal, the doctor argued that his dismissal constituted state action due to comprehensive regulation of revocation, restriction, or suspension of staff privileges in Mississippi hospitals. The Fifth Circuit disagreed and held that "private hospitals had at common law a right to revoke the staff privileges of physicians for good cause." Id. at 202. The Fifth Circuit further concluded that the legislation in question "simply authorizes action which is already legal, and requires only that the hospital comply with its own bylaws in making staffing decisions." Id.

Similar to the defendant hospital in Wong, SRHC's power to deny reappointment of staff privileges existed before the Kansas regulatory scheme was promulgated. Additionally, neither section 65-4929 nor section 28-34-6a impose upon medical facilities any further requirements than those contained within their own bylaws. In fact, as noted above, section 28-34-6a specifically provides:

> After considering medical staff recommendations, the governing body shall affirm, deny or modify each recommendation for appointment to the medical staff and the granting of clinical privileges to any practitioner. Formal application for membership and for granting of clinical privileges shall follow established procedures set forth in the bylaws, rules and regulations of the medical staff.

Therefore, the power to affirm, deny or modify an appointment or reappointment lies squarely on the governing body of the medical facility. Consequently, the denial of Conner's application for reappointment cannot be fairly attributable to the state.

**AFFIRMED.**

Entered for the Court


Tom Stagg
District Judge